**UNITED STATES, Appellee,**

v.

**Michael A. WARREN, Airman First Class, U. S. Air Force, Appellant.**

**No. 40,255.**
**ACM S24904.**

U. S. Court of Military Appeals.

July 6, 1982.

For Appellant: *Captain Willard K. Lockwood* (argued); *Colonel George R. Stevens* (on brief).

For Appellee: *Captain Richard O. Ely, II* (argued); *Colonel James P. Porter* (on brief).

*Opinion of the Court*
EVERETT, Chief Judge:

Notwithstanding appellant's pleas, a special court-martial of members convicted him of transferring .66 grams of methamphetamine on May 3, 1979, and of "transferring some quantity" of the same drug on the same date, in violation of Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892. Therefor, he was sentenced to a bad-conduct discharge, confinement at hard labor for 3 months, forfeiture of $279 pay per month for 3 months, and reduction to the lowest enlisted grade. Both the convening and the supervisory authorities approved the trial results, and the United States Air Force Court of Military Review affirmed. *United States v. Warren*, 10 M.J. 603 (1980).

The central issue in appellant's trial was credibility—that of the principal witness, Agent Darby of the Office of Special Investigation (OSI), against that of appellant and other defense witnesses supporting appellant's defense of alibi. By its verdict, the court-martial manifested its judgment on this test in favor of Darby. On this premise, trial counsel proceeded in his sentencing argument to urge the members that they consider in arriving at an appropriate sentence that appellant had lied to them in his testimony (emphasis added):

TC: *And it also needs to be demonstrated to this individual that lying about it is going to subject him to severe punishment.* So I would ask you to separate this man from the service punitively. And also give him the maximum period of confinement, which the judge will tell you is six months. Six months in

an Air Force confinement facility probably will do this man a lot of good. Let him sit in there and think about what he has done at this point in time in his life.

*Maybe that will teach him the importance of telling the truth* and not being involved in drug offenses, especially in dealing drugs. You can hardly think of a kind of offense which is worse for the morale and discipline of our troops than what this man has committed—

DC: Objection, Your Honor, counsel is arguing general deterrent (sic).

MJ: Yes. I will sustain your objection as to general deterrence and I instruct you gentlemen to disregard that aspect of the argument.

TC: Gentlemen, let me say this: This man needs a severe punishment to deter him from committing more offenses, deter this individual from committing more offenses, because we have seen in the case in chief what kind of individual this man is. *He is capable of getting up there and lying on the witness stand.*

Appellant, both before the Court of Military Review and now before this Court (10 M.J. 407), takes offense at the prosecutor's argument that his "lying" in his testimony on the merits properly should be considered in arriving at an appropriate sentence.[1]

## I.  *Background Observations*

At common law the issue posed here could not have arisen, for in a criminal trial the defendant was not competent to testify. *See Ferguson v. Georgia,* 365 U.S. 570, 573, 81 S.Ct. 756, 758, 5 L.Ed.2d 783 (1961); Silving, *The Oath: I,* 68 Yale L.J. 1329, 1365 (1959). To some extent, the rationale

for this disqualification was that because of his interest in the outcome a defendant was not trustworthy. *Ferguson v. Georgia, supra* at 573, 81 S.Ct. at 758. Writing in 1863, Sir James Stephens "argued that it was inherent that a defendant could not be a real witness: '[I]t is not in human nature to speak the truth under such a pressure as would be brought to bear on the prisoner, and it is not a light thing to institute a system which would almost enforce perjury on every occasion.'" *Id.* at 582, 81 S.Ct. at 763.

Gradually, the common law disqualification was eliminated. First, there developed in England and in some American states the practice of allowing the defendant to make an unsworn statement. Then, "decades ago the considered consensus of the English-speaking world came to be that there was no rational justification for prohibiting the sworn testimony of the accused, who above all others may be in a position to meet the prosecution's case," *id.;* and many legislatures eliminated the common law disqualification. Generally, the abolition of the incompetency of the criminal defendant to testify was viewed as also eliminating the occasion for unsworn statements.[2] Thus, in 1961, the Supreme Court could say, "The State of Georgia is the only State—indeed, apparently the only jurisdiction in the common-law world—to retain the common-law rule that a person charged with a criminal offense is incompetent to testify under oath in his own behalf at his trial." *Id.* at 570, 81 S.Ct. at 757.[3] Nor did Georgia subsequently retain its unique practice, for in *Ferguson,* the Supreme Court ruled that it was unconstitutional to limit a criminal defendant to making an

1. At trial, appellant did not object to this aspect of trial counsel's sentencing argument; neither did he request—nor receive *sua sponte*—any instruction from the military judge concerning the use of this factor in arriving at a sentence.

2. The military justice system is one of the few legal systems in which the unsworn statement coexists with the right of an accused to testify, para. 75c(2), Manual for Courts-Martial, United States, 1969 (Revised edition); but this coexist-

ence is limited to presentencing proceedings, and as to guilt or innocence an accused may only testify under oath. Article 42(b), Uniform Code of Military Justice, 10 U.S.C. § 842(b).

3. Civil law countries take a contrasting view. "In no civil-law country is the oath administered to the accused in a criminal case." Silving, *The Oath: II,* 68 Yale L.J. 1527, 1533 (1959).

unsworn statement. Accordingly, the route between each extreme was completed—from an accused's incompetence to testify at all to his absolute right to testify under oath.

■ The right to testify in one's own behalf has carried with it an amenability to prosecution for perjury. Indeed, a defendant who takes the stand runs the risk that—unless he is acquitted by a jury verdict which under the circumstances of the particular case gives rise to collateral estoppel, *see United States v. Hooten,* 12 U.S.C. M.A. 339, 30 C.M.R. 339 (1961), and *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469—he may be prosecuted for perjury by reason of the testimony he has given. *United States v. Williams,* 341 U.S. 58, 71 S.Ct. 595, 95 L.Ed. 747 (1951); *State v. Leonard,* 236 N.C. 126, 72 S.E.2d 1 (1952), *cert. denied,* 344 U.S. 916, 73 S.Ct. 339, 97 L.Ed. 706 (1953). Does a defendant who testifies also run the risk that, if he is convicted, the alleged falsity of testimony he has given in his own behalf may be utilized as a basis for increasing his sentence?

## II. *Grayson*

In *United States v. Grayson,* 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978), the Supreme Court answered this query in the face of a constitutional challenge in a situation similar to the one presented here. There, the district court judge, in sentencing the defendant after a jury had convicted him, said:

"I'm going to give my reasons for sentencing in this case with clarity, because one of the reasons may well be considered by a Court of Appeals to be impermissible; and although I could come into this Court Room and sentence this Defendant to a five-year prison term without any explanation at all, I think it is fair that I give the reasons so that if the Court of Appeals feels that one of the reasons which I am about to enunciate is an improper consideration for a trial judge, then the Court will be in a position to reverse this Court and send the case back for re-sentencing.

"In my view a prison sentence is indicated, and the sentence that the Court is going to impose is to deter you, Mr. Grayson, and others who are similarly situated. Secondly, *it is my view that your defense was a complete fabrication without the slightest merit whatsoever. I feel it is proper for me to consider that fact in the sentencing, and I will do so."*

*Id.* at 44, 98 S.Ct. at 2612.

After tracing the history of sentencing philosophy in this country, the Supreme Court recognized that today the extent of a federal defendant's imprisonment is determined by the judge who makes his decision within a range prescribed by Congress. And within that range, "the sentencing judge is obligated to make his decision on the basis, among others, of predictions regarding the convicted defendant's potential, or lack of potential, for rehabilitation." *Id.* at 47–48, 98 S.Ct. at 2614 (footnote omitted). The Court noted that the sentencing judge is aided in his effort by a presentencing report prepared for him by trained probation officers addressing all aspects of the defendant's life. After observing that this procedure has survived "[c]onstitutional challenges ... leveled at judicial reliance on such information," *see Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), the Supreme Court acknowledged what it earlier had said in *United States v. Tucker,* 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972): " '[B]efore making [the sentencing] determination, a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come.' " *United States v. Grayson, supra,* 438 U.S. at 50, 98 S.Ct. at 2615. *See generally United States v. Mack,* 9 M.J. 300, 317–24 (C.M.A. 1980). Further, the Court pointed out, "Congress recently reaffirmed this fundamental sentencing principle by enacting 18 U.S.C. § 3577 (1976 ed.):

'No limitation shall be placed on the information concerning the background, character, and conduct of a person con-

victed of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.' "

438 U.S. at 50, 98 S.Ct. at 2615 (footnote omitted).

After mentioning that "one serious study has concluded that the trial judge's 'opportunity to observe the defendant, particularly if he chose to take the stand in his defense, can often provide useful insights into an appropriate disposition,' ABA Project on Standards for Criminal Justice, Sentencing Alternatives and Procedures, § 5.1, p. 232 (App. Draft 1968)," the Supreme Court observed:

A defendant's truthfulness or mendacity while testifying on his own behalf, almost without exception, has been deemed probative of his attitudes toward society and prospects for rehabilitation and hence relevant to sentencing.

*Id.* Thereupon, the Court held, after expressly embracing the concept of a person's freedom of will:

Given the long-accepted view of the "ability and duty of the normal individual to choose," we must conclude that the defendant's readiness to lie under oath— especially when, as here, the trial court finds the lie to be flagrant—may be deemed probative of his prospects for rehabilitation.

*Id.* at 52, 98 S.Ct. at 2616. In so holding, the Court rejected Grayson's argument that what the sentencing court really had done was to save the Government the trouble of bringing a perjury charge against him.

The Supreme Court concluded its opinion with this reminder:

Nothing we say today requires a sentencing judge to enhance, in some wooden or reflex fashion, the sentences of all defendants whose testimony is deemed false. Rather, we are reaffirming the authority of a sentencing judge to evalu-

ate carefully a defendant's testimony on the stand, determine—with a consciousness of the frailty of human judgment— whether that testimony contained willful and material falsehoods, and, if so, assess in light of all the other knowledge gained about the defendant the meaning of that conduct with respect to his prospects for rehabilitation and restoration to a useful place in society.

*Id.* at 55, 98 S.Ct. at 2618.[4]

### III. *Applicability in Courts-Martial*

Appellant seeks to avoid application of the *Grayson* rationale in courts-martial by arguing, first, that it *cannot* be applied because of limitations on what a court-martial can consider in its sentencing deliberations which are not present in a federal district court and, second, that it *should not* be applied because of differences between the sentencing systems of courts-martial and federal district courts.

### A.

As we took care to point out in our analysis of *Grayson*, the Supreme Court placed a good deal of reliance on the fact that the sentencing judge in the federal criminal justice system is virtually unlimited both in the matters which he can consider in arriving at an appropriate sentence within the prescribed range for the offense concerned and in the sources of that matter. By way of contrast, appellant urges in his brief in this Court:

Only those matters properly introduced by the prosecution and defense, pursuant to paragraph 75, Manual for Courts-Martial, [United States, 1969 (Revised edition)], may be considered by the court. For similar reasons, at least one state court has determined that *Grayson* should not apply to its criminal sentencing procedure. *People v. Cowherd*, 20 Ill.Dec. 344 [348], 63 Ill.App.3d 229, 380 N.E.2d 21, 25 (1978).

4. The Supreme Court recently reaffirmed this general principle in *Roberts v. United States*, 445 U.S. 552, 558, 100 S.Ct. 1358, 1363, 63 L.Ed.2d 622 (1980), where the Court approved, as relative to rehabilitative potential, the ex-

pressed consideration by the sentencing judge of the fact that the defendant had refused repeated requests by the authorities to name fellow drug suppliers.

Indeed, the court in *Cowherd* did distinguish *Grayson* on the basis of the information which can properly be considered by the sentencing judge in arriving at an appropriate sentence. After pointing out that in *Grayson* the Supreme Court noted that under authority of *Williams v. New York*, *supra*, "it was not unconstitutional for the sentencing judge to consider criminal conduct for which defendant had not been tried and convicted," the Appellate Court of Illinois revealed:

The Illinois courts have long followed a contrary rule to hold that evidence of arrests or other charges which did not result in conviction is not admissible at a hearing in aggravation and mitigation for purpose of sentence. *People v. Riley* (1941), ... 376 Ill. 364, 33 N.E.2d 872.

The court went on to hold:

Here, the record indicates that the sentence was enhanced by reason of the trial court's conclusion that defendant committed perjury at his trial. As we perceive it, such enhancement violates the rule stated in *Riley* which holds that evidence of criminal conduct for which defendant is not tried and convicted is not competent or admissible at a sentence hearing.

*People v. Cowherd, supra*, 20 Ill.Dec. at 348, 380 N.E.2d at 25.

■ Admittedly, there are striking similarities between Illinois' limitations on evidence of criminal misconduct which may be adduced in a presentencing hearing and those applicable to courts-martial.[5] Paragraph 75*b*(2) of the Manual for Courts-Martial, United States, 1969 (Revised edition), expressly addresses evidence of previous convictions by courts-martial and prescribes that for sentencing only certain final convictions are admissible. Prior civil convictions, too, may be admissible through paragraph 75*d*, see *United States v. Cook*, 10 M.J. 138 (C.M.A.1981), under the same restrictions—*i.e.*, finality of the conviction—that apply to prior convictions by courts-martial. *United States v. Krewson*,

12 M.J. 157 (C.M.A.1981). Further, under paragraph 75*d*, certain other evidence of prior misconduct may be presented, such as certain prior nonjudicial punishments under Article 15, UCMJ, 10 U.S.C. § 815. *See United States v. Brown*, 11 M.J. 263 (C.M.A. 1981). However, unless both the letter and the spirit of the limitations in paragraph 75 are met, evidence of an accused's misconduct may not be received in evidence for consideration in sentencing. *See United States v. Boles*, 11 M.J. 195 (C.M.A.1981).

Regardless of what restrictions paragraph 75 does or does not impose on the presentation of sentencing evidence, one thing is clear: Paragraph 75 addresses only what *new matter* may be presented to the court by counsel at that stage of the proceedings. Thus, paragraph 75*a*, the introductory portion of this provision, states (emphasis added): "*After the findings of guilty have been announced, the prosecution and defense may present appropriate matter to aid the court in determining the kind and amount of punishment to be imposed.*" It does not purport to limit the members' consideration of other matters already properly before the court; neither does it restrict their consideration of logic, common sense, and events which they themselves have properly observed in the courtroom during the trial.

■ Accordingly, paragraph 75 of the Manual does not restrict application in courts-martial of the rationale of *United States v. Grayson, supra*.

B.

■ Judge Kastl filed a thoughtful concurring opinion below in this case in which, while acknowledging that it is constitutionally permissible for the sentencing authority to evaluate in sentencing the fact that an accused lied to the court, he maintained that it is, nonetheless, suitable to determine whether "a narrower formulation, ... is in better consonance with our military justice

---

5. Paragraph 75, Manual, *supra*, sets forth the presentencing procedure to be followed in courts-martial, including what matters may be presented by the prosecution and by the defense at that stage bearing on an appropriate sentence.

system." [6] *United States v. Warren, supra* at 605. Thereafter, Judge Kastl proceeded to analyze the differences between the federal and the military sentencing systems and identified four important distinctions which might bear on the question now before us. *Id.* at 605–06. While Judge Kastl expressed no conclusion as to the persuasiveness of these differences in institutional characteristics in arguing for a different rule in our system than *Grayson* permits, impliedly he found them not compelling. We agree.

Although "[s]entencing in Federal ... courts" is by "a judge sitting alone" who "presumably is well experienced in penology," in the military it may well be done by a court of "lay members who ... are untrained in penology." *Id.* at 605 (footnote omitted). Of course, this observation would not seem to require that *Grayson* be disregarded if a military judge is sitting alone as a court-martial. Indeed, since military judges—unlike Federal district judges—try only criminal cases, they may have a unique expertise in penology. However, even when sentencing is done by court-martial members, we cannot discount the relevance of Judge Frankel's remark in *United States v. Hendrix*, 505 F.2d 1233, 1236 (2nd Cir. 1974), *cert. denied*, 423 U.S. 897, 96 S.Ct. 199, 46 L.Ed.2d 130 (1975): "While ... [the theory of individualized sentencing and concern for the rehabilitative likelihood of a defendant] lasts, however, a fact like the defendant's readiness to lie under oath before the judge who will sentence him would seem to be among the more precise and concrete of the available indicia." Furthermore, while it may be true that "[i]n Federal civilian courts, the reasons for an increased sentence generally are spread upon the record," 10 M.J. at 605—which is not practicable in the military when members adjudge the sentence—we know of no requirement that *any* sentencing authority in the federal system or in ours account fully for what considerations had the most impact in arriving at the ultimate sentence. In Federal criminal trials, the district judge has the benefit of an extensive pre-sentence report compiled by a probation officer, but a military judge or members of a court-martial may lack access to equally comprehensive sentencing information.[7] Perhaps, then, they will attach special importance to an accused's perjury because they have relatively few other factors to consider in sentencing. However, any risk of this sort is more than neutralized by the unique sentence review available in military justice. The convening authority—who often will have been provided extensive information about an accused—and the Court of Military Review can grant relief by reducing the sentence if it appears that excessive weight was given by the sentencing authority to the accused's mendacity.

Finally, while a judge may be better equipped to *identify* how serious falsehoods by an accused may relate to his potential for rehabilitation, he certainly is in no better position to *weigh* the existence or seriousness of a falsehood than is the body which determined that the accused lied in the first place; to the extent necessary the judge's instructions can provide the court members with adequate guideposts for considering this factor in arriving at an appropriate sentence.

■ Since we are unpersuaded that the structure of sentencing in military justice, as opposed to that of the federal civilian system, requires a different result, we conclude that *Grayson* applies to trials by courts-martial. Accordingly, in sentencing, a military judge may properly consider that the accused's false testimony in his own defense tends to refute claims of his repentance and readiness for rehabilitation. Of course, the sentence should not be increased as a punishment for perjury or a deterrent

6. This exercise is appropriate to ensure that a military accused is afforded military due process in light of the inherent nature of the military and its justice system.

7. On the other hand, the information about an accused contained in his service record and presented to the military judge or court members for sentencing purposes may be more detailed than that which a probation officer can obtain about a civilian defendant.

to others; if the perjury is to be punished as such, it should be in a separate prosecution for that offense. Within the same limitations, members of a court-martial may consider the accused's perjury for sentencing purposes and trial counsel may argue for its consideration by the judge or the members.[8]

## IV. *Caution*

We do not underestimate the mischief to which our ruling today might be put. Judge Kastl in his opinion below was properly "concerned that the particular pet we welcome today into our judicial household will not easily be housebroken." *United States v. Warren, supra* at 607. It must be remembered that the Supreme Court in *Grayson* did *not* approve a *per se* increase in an accused's sentence because of his false testimony. Instead, all that the Supreme Court blessed—and all that we approve here—is an appropriate consideration of this factor as *an indication* of an accused's *rehabilitative potential* in arriving at an appropriate sentence for offenses of which he has just been convicted. Accordingly, any over-emphasis by trial counsel which amounts to an invitation to the court "to rely on" this factor "to the exclusion of" others "borders on inflammatory argu-

ment." *See United States v. Lania,* 9 M.J. 100, 104 (C.M.A.1980).

When trial counsel does choose to urge in his sentence argument that an accused's alleged lying to the court is a factor to be considered as to his rehabilitative potential, the military judge should appropriately instruct the court upon request of the accused.[9] Those instructions should include several elements.

First, the members should be warned that, notwithstanding any argument by trial counsel, this factor should play no role whatsoever in their determination of an appropriate sentence unless they conclude that the accused *did* lie under oath to the court. It bears noting that *not every* verdict of guilty returned by the court necessarily "raise[s] the spectre of false testimony." *United States v. Warren, supra* at 606. We reiterate what the majority opinion in *United States v. Moore,* 484 F.2d 1284, 1287–88 (4th Cir. 1973), admonished:

> We caution, however, that sentencing judges should not indiscriminately treat as a perjurer every convicted defendant who has testified in his own defense. Witnesses induced by sordid motives or fear have been known to fabricate accu-

---

**8.** In oral argument before this Court, appellate defense counsel urged that even if we conclude, as we do, that *United States v. Grayson,* 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978), applies in courts-martial and that it is a proper consideration in determining an accused's rehabilitative potential that the accused lied before the court, trial counsel nonetheless should not be permitted to argue this consideration to the court. What we said in *United States v. Lania,* 9 M.J. 100, 104 (C.M.A.1980), regarding general deterrence as an appropriate sentencing consideration applies with equal logic here:

> Since general deterrence is suitable for consideration in sentencing ... there is no reason to insulate this factor from argument by trial counsel. If the Government is to be allowed an opportunity to present argument on sentence, *see United States v. Olson,* 7 U.S.C.M.A. 242, 22 C.M.R. 32 (1956), then we can find no basis to prevent trial counsel from reminding the court members that general deterrence should be borne in mind.

**9.** Even without a request of counsel, the judge may instruct the court members as to the significance for sentencing purposes of false testi-

mony given by the accused in his own defense. However, the judge should be hesitant about giving such instructions against the wishes of the defense, since we recognize that they may prove counter-productive. *See United States v. Wray,* 9 M.J. 361 (C.M.A.1980). Furthermore, even in the absence of argument by trial counsel, the judge may give such instructions if it appears to him from the circumstances of the case that the court members must have determined that the accused testified falsely in his own defense and that this determination is likely to be misused for sentencing purposes. Here again, he should be reluctant about giving this instruction over defense objection. In short, while we believe that false testimony on the part of the accused is a circumstance that the court members may properly take into consideration in sentencing, there is no requirement that, whenever an accused has testified in his own defense, a judge on his own initiative inform the court members that they may consider the accused's testimony in determining his suitability for rehabilitation.

sations with such guile that even conscientious triers of fact have been misled. Moreover, some essential elements of proof of criminal conduct, such as knowledge, intent, malice, and premeditation are sometimes so subjective that testimony about them cannot be readily categorized as true or false. Judges must constantly bear in mind that neither they nor jurors are infallible. A verdict of guilty means only that guilt has been proved beyond a reasonable doubt, not that the defendant has lied in maintaining his innocence.

As the concurring judge in *Moore* colorfully put it, "Truth is, indeed, stranger than fiction, and every one of us knows of at least one cock-and-bull story, believed by no one, that turned out to be true." *Id.* at 1288 (Craven, J., concurring).

Second, the members should be advised that such lies must have been, in their mind, "willful and material" before they can be considered in their deliberations. *See United States v. Grayson, supra* 438 U.S. at 55, 98 S.Ct. at 2618. Logically, if an accused sincerely believes what he is saying—even if the court subsequently concludes it was untrue—or, even though willful, if the falsehoods were of no real importance but rather only reflect an accused's hedging somewhat on a minor point about which he could not bring himself to be entirely frank, those circumstances do not speak with any great authority on an accused's prospects for rehabilitation.

Finally, the members should be alerted that this factor may be considered by them only insofar as they conclude that it, along with all the other circumstances in the case, bears upon the likelihood that the accused can be rehabilitated. They may *not* mete out additional punishment for the false testimony itself. *See United States v. Grayson, supra.* This distinction is a real one and it must be clearly drawn by the military judge in his instructions and morally adhered to by the individual members when voting on the sentence.

## V. *This Case*

■ In the case at bar, appellant did not request any instructions from the military judge on the argument of trial counsel concerning appellant's alleged lies in his testimony. Moreover, neither the quality of the argument nor the frequency of mention therein of the alleged lies resulted in this factor being over-emphasized to the members, nor was the argument an invitation to sentence appellant for perjury as opposed to considering appellant's lack of truthfulness as a factor relating to his prospects for rehabilitation. Accordingly, we discern no prejudice to appellant from trial counsel's argument in this case.

The decision of the United States Air Force Court of Military Review is affirmed.

Judge COOK concurs.

FLETCHER, Judge (concurring in the result):

I concur with my Brothers' opinion that *United States v. Grayson*, 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978), is applicable to courts-martial.

My point of departure from my Brothers' opinion centers on the obligation to see that the jury is instructed to limit consideration of the possible perjury of an accused. The majority opinion places this burden upon the defense counsel; thus the instruction, if not requested, is waived. I suggest that a defense counsel is in a poor position to request an instruction that includes the possible conclusion that his client is a liar. Of governing direction is the gossamer line drawn by the Supreme Court in *United States v. Grayson, supra,* for consideration of possible perjury by the accused as to sentence. The Supreme Court stated the following:

> Rather, we are reaffirming the authority of a sentencing judge to evaluate carefully a defendant's testimony on the stand, determine—with a consciousness of the frailty of human judgment—whether that testimony contained willful and material falsehoods, and, if so, assess in light of all the other knowledge gained about

the defendant the meaning of that conduct with respect to his prospects for rehabilitation and restoration to a useful place in society.

*Id.* at 55, 98 S.Ct. at 2618.

The Court, while relying on the most qualified person in the courtroom, admits to the possibility of a "frailty of human judgment" even in judges; therefore, it places great caution on its use. When it is necessary to instruct on this question it should be left to the sole determination of the trial judge. Accordingly, if he determines that an instruction should be given, he must give such an instruction whether requested or not.

Argument of trial counsel, as set forth in the majority opinion, could have triggered the need for an instruction if there was a legal determination by the trial judge that the accused's "testimony contained willful and material falsehoods." Whether to increase the sentence for the purpose of rehabilitation because of the accused's willful conduct in a material area is in the military justice system a matter for the sentencing jury.

No instruction was given in this case. Trial judges are not mere robots; they are presumed to appreciate the law of the appellate courts, military or civilian, and the effect these decisions have on the matter then presently before them. I believe that the trial court in this case considered the ramifications of *United States v. Grayson, supra,* as to the present case, and found that an instruction was not necessary.