UNITED STATES, Appellee,

v.

Timothy CABEBE, Private, U.S.
Army, Appellant.

No. 42,382.
CM 440875.

U. S. Court of Military Appeals.

July 6, 1982.

For Appellant: *Colonel Edward S. Adamkewicz, Jr., Major Raymond C. Ruppert, Major Joyce E. Plaut, Captain James A. McAtamney* (on petition).

For Appellee: *Major John T. Edwards* (on petition).

### Opinion of the Court

EVERETT, Chief Judge:

After trial upon a charge alleging assault with intent to commit murder, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934, a general court-martial convicted appellant, despite his pleas, of assault whereby grievous bodily harm was intentionally inflicted, in violation of Article 128, UCMJ, 10 U.S.C. § 928. The members sentenced appellant to a bad-conduct discharge, confinement at hard labor for 12 months, forfeiture of $200 pay per month for 12 months, and reduction to the lowest enlisted grade. The convening authority approved these results, and the United States Army Court of Military Review affirmed.

On petition of appellant, this Court specified further review of the military judge's

instruction that in their sentencing deliberations the members could consider whether appellant had testified falsely. 13 M.J. 19 (1982). We conclude that the military judge instructed improperly in this regard and that, under the circumstances of this case, some relief is necessary.

## I

From a somewhat confusing record, it appears that at a parking lot of the Dragon Club at Fort Bragg, North Carolina, an exchange of insults occurred between a small group of which appellant was a member and another group to which his victim belonged. Appellant claimed that in response to certain events he had struck out in self-defense with a knife and, in so doing, had accidentally wounded his victim. However, the prosecution contended that many of the events on which Cabebe relied for his claim of self-defense never occurred and those which did take place would not justify appellant's fear of injury. Indeed, the prosecution insisted that appellant was the aggressor in many respects.

After findings of aggravated assault had been returned by members and after additional evidence and argument had been presented by counsel on an appropriate sentence for appellant, the military judge set out to instruct the members prior to their sentence deliberations. Tailored to the facts, his advice was (emphasis added):

Now, in selecting your sentence as I've said, you should consider all matters in extenuation, mitigation, or aggravation. Whether they were introduced before or after your findings. This means that all the evidence you heard in the case may be relevant and may be considered, if so, on the subject of sentencing. Now, among the things that fall within that broad category that you should consider, but not exclusively, are the accused's age, the accused's record in the eyes of his supervisors for duty performance, the family difficulties that had been experienced by the accused, financial, the accused's education, the awards which the accused has received, the Article 15 pun-

ishment, the past performance, conduct, education, training, and experience in the service as reflected by the testimony you've heard, and the DA Form 2–1, which you'll receive, the accused's expression of a desire to remain in the service. You should consider the circumstances of the offense, and that means to draw a realistic picture of what your findings mean and the context in which that crime was committed. No artificial boundaries here. Figure out what happened. What did—you found that the accused intended to inflict grievous bodily harm, obviously that's a matter that you should consider in determining the proper punishment in this case, along with all the other factors. Obviously, you've decided that the accused was not entitled to the defense of accident. You may have found, and this is for each of you to decide individually, ultimately, although you certainly may discuss it and deliberate on it. You may have found that the accused didn't even apprehend any injury to himself, and thus wasn't operating from any sort of self-defense basis, or you may have found that he was fully entitled to threaten the use of force as his testimony indicated that he was, but that he exceeded that and then intentionally inflicted the injury involved. I'm not trying to pick anything in particular out here to harp on, just trying to illustrate the sort of thing that you have to figure out. The relevant factors of what this man did, and why, and under what circumstances, and what intention. It's appropriate also for you to consider his attitude toward his offense subsequent to the time of its commission. If you want to find out how a person is going to behave in the future, it may be logically instructive to see what he has done in that portion of the future that's already taken place after the event that we're dealing with. The nature and extent of the injuries suffered by the victim. The period of hospitalization and convalescence required by the victim. The nature of the weapon that was used in the commission of the offense. These are some other factors. And none of

these are inherently for or against an accused. I'm not trying to sum up anybody's arguments on either side about what ought to be the sentence in this case. All of them have the potential to either be aggravating, or mitigating factors, you have to think them through, figure out how they impact on the seriousness of this matter, and ultimately how they contribute to your formulation of what's a fair, proper, just sentence in this case. *It may be that you have concluded in your deliberations that the accused's testimony was in some respect, was untrue. No person, including an accused, has a right to seek to alter or effect [sic] the outcome of a court-martial trial by false testimony. If you're satisfied, convinced in your own mind that the accused has lied to you in his testimony, you may also consider that as a matter in determining your sentence. You must of course not operate on speculation in this respect anymore than in any other.*

At the end of the instructions, defense counsel asked to approach the bench, whereupon he noted that the Government had not requested the instruction about the possibility that appellant had lied,[1] nor had that factor been argued by either party. Therefore, counsel objected to the instruction; challenged the military judge for cause on the grounds that the judge had left his role of impartiality; and moved for a mistrial based on the instruction. At a closed session called to discuss this matter, trial counsel observed that, when the evidence fairly raises a matter, the judge is required, *sua sponte*, to instruct thereon. Defense counsel responded that even if evidence—not a request by the parties—should be the trigger for such an instruction, this instruction is potentially so prejudicial that it should only be given if requested. The judge replied:

I think you overlook the point that . . . [trial counsel] invited the court's attention explicitly at the end of his argument to a difference between what your client had said in his sworn testimony on sen-

tencing, and what Prosecution Exhibit 3 said. I'll be the last to tell anybody I'm not aware of the fact that, if the court decides that the accused lied to them, and if they're told—if they consider that rather, on sentencing, it may go hard for him, but I'm also forced to take into account the fact that the instruction contained the only information anybody had addressed to this court on that subject, and specifically included a requirement that they must be convinced that that was the case, before they could make that consideration. Furthermore, I'll point out that the accused's testimony is totally—not totally, but is necessarily factually inconsistent [sic] with the verdict. There is no way that they could have believed everything the accused said and convicted him of the offense for which they did. Their finding necessarily means they included—had concluded that in some respect at least your client lied to them. At least, that's my analysis, or was.

## II

In *United States v. Warren,* 13 M.J. 278 (C.M.A.1982), we held that the sentencing authority in a court-martial may properly consider whether an accused falsely testified in his own defense and, if so, whether such false testimony reflects adversely on the accused's repentance and readiness for rehabilitation. *See United States v. Grayson,* 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978). In line with this ruling, we recognized that a trial counsel may argue this matter to the sentencing authority and, when that sentencing is by the members, a military judge may appropriately instruct thereon. We further acknowledged that "even in the absence of argument by trial counsel, the judge may give such instructions if it appears to him from the circumstances of the case that *the court members must have determined that the accused testified falsely in his own defense and that this determination is likely to be misused* for sentencing purposes." *Id.* at 285 n.9 (emphasis added).

---

1. The military judge had given no prior indica-
tion that he intended to instruct in this area.

■ Here, the military judge articulated two bases for the instructions he gave. First, he considered that trial counsel had pointed out to the court members at the end of his argument on sentence that appellant's sworn testimony during the presentencing proceedings differed from the information contained in prosecution exhibit 3. In fact, trial counsel's comments were only to this effect:

And one last thing I would just point out to you. Cabebe's 2–1 [DA Form 2–1— prosecution exhibit 3] doesn't seem to indicate he got an expert badge on grenade, it seems to indicate he got a sharpshooters badge. Thank you.

Even if these remarks are construed as an argument that appellant had lied to the members, the substance of the discrepancy was of such a minor, tangential nature that it does not warrant the instruction. *See United States v. Warren, supra.*

■ Second, the judge pointed out that certain parts of appellant's testimony were "necessarily . . . inconsistent with the verdict" and, therefore, that the members "had concluded that in some respect at least your client lied to them." This jump in logic is not always appropriate for as we noted in *Warren,*[2] "It bears noting that *not every* verdict of guilty returned by the court necessarily 'raise[s] the spectre of false testimony.'" Also, there we reiterated the admonition of the Court of Appeals in *United States v. Moore,* 484 F.2d 1284, 1287–88 (4th Cir. 1973):

[S]ome essential elements of proof of criminal conduct, such as knowledge, intent, malice, and premeditation are sometimes so subjective that testimony about them cannot be readily categorized as true or false . . . . A guilty verdict means only that guilt has been proved beyond a reasonable doubt, not that the defendant has lied in maintaining his innocence.

■ Because the record here is rather confusing, the existence of false testimony by the accused is much less obvious than in some cases. However, even if we assume for present purposes that appellant's falsity was perceptible enough to provide a proper basis for the judge's *sua sponte* instruction, he erred in introducing this factor without providing more complete guidelines for its consideration. As we said in *Warren*[3]:

Those instructions should include several elements.

First, the members should be warned that, notwithstanding any argument by trial counsel, this factor should play no role whatsoever in their determination of an appropriate sentence unless they conclude that the accused *did* lie under oath to the court.

Second, the members should be advised that such lies must have been, in their mind, "willful and material" before they can be considered in their deliberations.

Finally, the members should be alerted that this factor may be considered by them only insofar as they conclude that it, along with all the other circumstances in the case, bears upon the likelihood that the accused can be rehabilitated. They may *not* mete out additional punishment for the false testimony itself.

### III

■ The segment of the instructions concerning the possibility of appellant's lying was only a portion of comprehensive instructions about several possible sentencing considerations which the members might wish to take into account. However, that instruction presented the distinct possibility that, if the members concluded appellant had lied to them, they might "mete out additional punishment for the false testimony itself"—without any caution that appellant's lies, if deemed willful and material, could only be used in determining whether appellant was capable of being rehabilitated. While the members, by their verdict, necessarily concluded that appellant did not accidentally stab the victim in the course of self-defense, the record also portrays a situ-

---

2. *United States v. Warren,* 13 M.J. 278, 285 (C.M.A.1982).

3. *Id.* at 285.

ation where appellant was not the only one present that night who acted rashly and in a hostile manner. Under all the circumstances of the case—including defense counsel's timely objection to the instruction—and in view of the punishment adjudged, we are unsure that the instructions as to appellant's possible lying had no improper effect on appellant's sentence.

Accordingly, the decision of the United States Army Court of Military Review is reversed as to sentence. The record of trial is returned to the Judge Advocate General of the Army for submission to that court for reassessment of the sentence in light of this opinion.

Judges COOK and FLETCHER concur.