UNITED STATES, Appellee,

v.

**Specialist Four Calvin (NMN) GORE, SSN 248–35–7216, United States Army, Appellant.**

CM 442075.

U. S. Army Court of Military Review.

22 Nov. 1982.

Captain Kenneth G. Gale, JAGC, argued the cause for the appellant. With him on the brief were Major Raymond C. Ruppert, JAGC, and Major Joyce E. Peters, JAGC.

Captain Richard P. Laverdure, JAGC, argued the cause for the appellee. With him on the brief were Colonel R.R. Boller, JAGC, Lieutenant Colonel John T. Edwards, JAGC, and Major Michael R. Smythers, JAGC.

Before MILLER, KUCERA and BADAMI, Appellate Military Judges.

## OPINION OF THE COURT

MILLER, Senior Judge:

Appellant was charged with attempted robbery, indecent assault, assault with intent to commit rape and assault with intent to commit sodomy, in violation of Articles 80 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 880 and 934 (1976). At his general court-martial he was acquitted of attempted robbery and in the three remaining instances, found guilty of the lesser included offense, assault consummated by a battery, in violation of Article 128, UCMJ, 10 U.S.C. § 928 (1976). He was sentenced to a bad-conduct discharge, confinement at hard labor for 12 months, forfeiture of all pay and allowances, and reduction to the grade of Private E-1. The convening authority disapproved the finding of guilty as to one of the assault charges. Appellant contends: (1) the finding of guilty by exceptions and substitutions of Specification 1 of Charge II (assault with intent to commit rape) is invalid because of a fatal variance; (2) two of the assault specifications are multiplicious and violate the double jeopardy clause of the Fifth Amendment to the U.S. Constitution; (3) the military judge erred in instructing the members regarding a bad-conduct discharge; (4) the military judge erred in failing to declare a mistrial after the misconduct of the president of the court, and in failing to sustain a challenge for cause against such member; (5) the military judge erred in instructing the members during sentencing regarding the effect of the accused's possible perjury; (6) the post-trial review of the staff judge advocate is insufficient; and (7) the military judge erred by admitting evidence of a vacation of punishment under Article 15, UCMJ, 10 U.S.C. § 815 (1976).

We agree with the two contentions concerning the instructional error, *viz.* instructing the members regarding the bad-conduct discharge and on the effect of perjury. We remand for resentencing.

There were basically three versions of the crime given at trial. The victim's testimony supported the charges. Appellant gave an opposite version from the witness stand which differed from a written statement he gave just after he was apprehended.

The victim testified that about 0200 hours on 13 June 1981, after an evening of drinking and dancing at the Fort Jackson Annex, she was getting ready to call a cab to take her home when appellant offered her a ride. She agreed. Appellant had a male friend with him whom he dropped off first. Appellant then, without the victim's consent, drove to a sanitary fill located on post. On the way appellant told her that she was "either going to go down on him or fuck him." She refused and told him she had to get home.

After he reached the fill and pulled off the road, he reached over and touched her breasts in an attempt to put his hand under her leotard. She pushed him back and asked him to take her home. He refused, got out of the car and went to the passenger side where she was sitting. She slid over to the driver's side but the keys were not in the ignition and he opened the passenger's door, pulled her out on to the ground and began to hit and kick her, saying that she was either going to "go down on him" or "fuck him." She refused and he kept hitting her. He then got into the car and she started walking away. He came back a second time, threw her to the ground, hit and kicked her while repeating his previous demands. At that time she kicked him in the face, cutting him under the eye. He then took her purse, demanded her money and upon finding none, dumped the contents on the ground. He started to walk off with the purse when a military police vehicle approached. Appellant came back to the victim and tried to cover her mouth so she wouldn't scream; however, she managed to avoid him, screamed, bringing the MPs to the scene and causing appellant to flee.

Appellant's testimony from the witness stand was in direct opposition to the victim's. According to him, the victim made advances in the car and suggested they go park and have a party. She directed the car to the area. When they stopped, he tried to put his arm around her but she complained that he could at least take her to his barracks. He denied touching her breasts but might have done so accidentally. When he told her that he had a fiancee, she went crazy and fell out of the car on the ground kicking, hollering and "carrying on." He tried to pull her up and she slapped him, so he slapped her back "trying to get her straight." She swung her purse at him and that's how the contents came out and fell on the ground. She finally calmed down and they started to walk to the car when the military police approached. She started screaming like someone was trying to murder her so he fled because he was afraid that the MPs would beat him to death because he was a black and the victim was white. He ran to his fiancee's house and he was later apprehended when he and his fiancee returned to secure his automobile.

In his written statement which was admitted into evidence, appellant said the victim either got out of the car herself, or he helped her out and they talked for a while. Then, he didn't know why, but he hit her a couple of times. He may have touched her breasts but he wasn't sure. He didn't remember kicking her but "We changed licks a couple of times." He decided to leave but felt guilty about leaving her out there alone and returned when she started talking with a "raggety mouth." For some unknown reason he grabbed her purse. He didn't know how the contents of the purse ended up on the ground. When he noticed the MPs coming, he tried to put his hand over her mouth because he was afraid she would yell that he had raped her. When she did yell, he ran to his fiancee's house and changed his clothes.

The evidence disclosed that the kick the victim gave appellant below the eye caused a bleeding cut and that his blood was on the shirt found at his fiancee's house.

### The Variance

■ Specification 1 of Charge II alleged that appellant committed an indecent assault "by fondling her breasts with intent to gratify his lust and sexual desires." The members found appellant guilty of the lesser included offense of assault and battery by unlawfully striking the victim on the chest. Appellant argues that the word "strike" connotes a violent assault as opposed to the nonviolent fondling alleged and therefore creates a fatal variance. We do not agree. Had the members merely substituted the words "unlawfully touched" instead of "strike" appellant would have no quarrel with the finding. We believe the distinction here to be without a difference. Both a striking and an unlawful touching are batteries and appellant was neither misled nor subjected to double jeopardy. *See United States v. Lee,* 1 M.J. 15 (CMA 1975).

### Multiplicity

■ Appellant contends the assault and battery in the car and the first assault and battery which occurred outside of the car are multiplicious. We do not agree. In *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the Supreme Court set forth the following test in order to determine whether there are two offenses or really only one: whether each provision requires proof of an additional fact which the other does not. We apply this test to the facts here. If we were to eliminate the facts which form the basis for the assault in the car, are there any facts left upon which to base the assault outside of the car? The answer is clearly in the affirmative. And, if we were to reverse the test by eliminating the facts upon which the assault outside the car is based, we would still be left with the facts showing an assault inside the car. Under the *Blockburger* test there were two distinct offenses. The military has liberalized the *Blockburger*

rule. In *United States v. Posnick,* 8 U.S.C.M.A. 201, 24 C.M.R. 11 (1957), the same proof or same evidence rule is set forth. If the proof of one offense proves the other, the offenses are multiplicious. Application of this rule to the facts here shows there were two separate offenses. As pointed out in the work of Homer E. Moyer, Jr., "Justice and the Military," § 2–667 et seq., more than one test has been applied in the military justice system including a single impulse or single integrated transaction test. *See United States v. Weaver,* 20 U.S.C.M.A. 58, 42 C.M.R. 250 (1970). Applying the single impulse test here, one could legitimately conclude that the impulse was sexual gratification and that the impulse for both assaults was the same. However, the Court of Military Appeals has developed a substantial body of case law holding that specific crimes generally remain separately punishable. Crimes of violence fall into this category. In *United States v. Ompad,* 15 U.S.C.M.A. 593, 36 C.M.R. 91 (1966), the Court upheld convictions for two assaults on the same victim when only a short time elapsed between the two assaults. In doing so the Court pointed out that the second assault was a new and separate attack not the continuation of a momentarily interrupted act (the victim, after the first assault, left the scene and the accused sought him out for the second assault).

Here, the second assault and battery was committed in order to physically beat the victim into submission and markedly different from the assault which occurred in the automobile. It was a new assault which differed in character and intensity from the touching of the victim's chest in the car. We hold there were two separate and distinct crimes.

Since we have held there were two separate crimes, appellant's contention that the staff judge advocate erred in his post-trial review is without merit.

### Instructing on the BCD

■ Neither of the offenses of which appellant was convicted, standing alone, authorizes the imposition of a punitive dis-

charge. Because appellant committed multiple offenses and the resulting maximum imposable sentence to confinement exceeded six months, imposition of a bad-conduct discharge was authorized by the aggravation clause of paragraph 127c, Manual for Courts-Martial, United States, 1969 (Revised edition). The military judge erred by failing to instruct the members that a bad-conduct discharge was permissible only because of the multiple offenses. *United States v. Murray,* 19 U.S.C.M.A. 109, 41 C.M.R. 109 (1969); *United States v. Yocum,* 17 U.S.C.M.A. 270, 36 C.M.R. 68 (1967). Normally such error must be treated for prejudice. However, in view of the further instructional error discussed *infra,* we cannot state with absolute certainty that there is no reasonable possibility that the court members would not have adjudged a bad-conduct discharge even if they had been instructed on the aggravation clause.

### The Misconduct of the President of the Court

■ The second day of the trial, appellant's civilian counsel informed the military judge that the president of the court Colonel D. came out of the deliberation room and he heard him say, "Are we ready to go. I'm fed up with this crap." Defense counsel also told the judge that he had been informed that Colonel D. "blew up" when he heard the trial was going to be delayed that morning for an hour and that the Colonel had also made other remarks about the delay including some statement about the civilian defense counsel delaying the trial. The defense counsel then moved for a mistrial and challenged Colonel D. for cause. The military judge called the members in, explained to them the reason for the delays, told them why they were necessary and that the members were expected to tolerate them. He then asked each member, including the president, whether they could impartially decide the case based upon the evidence and not be influenced by the delays. They all said they could, and the military judge denied the motion for mistrial and challenge for cause. Appellant contends the military judge erred. We do not agree.

■ The decision as to whether to grant a mistrial rests in the sound discretion of the military judge. *Cf. United States v. Grant,* 10 U.S.C.M.A. 585, 28 C.M.R. 151 (1959). The military judge has the same discretion in ruling on a challenge for cause. *United States v. Findlay,* 7 M.J. 931 (ACMR 1979). The members were instructed and questioned by the military judge. Their answers disclosed they, including the president, could still sit as impartial triers of fact. The results reflect they did so. The military judge did not abuse his discretion.

### The Instruction on Accused's Possible Perjury

■ During the sentencing the military judge instructed the members, over defense objection, as follows:

I also advise you that if you find beyond a reasonable doubt that the accused, under oath today, made a material false statement, that he did not believe to be true, you may consider this as a matter in aggravation. An accused does not have a right to make a false statement to effect the determination of his guilt or innocense...

Trial counsel did not argue to the members during the sentencing phase of the proceedings that it should consider appellant's false testimony in arriving at the sentence.

Appellant contends the instruction was erroneous. We agree. In *United States v. Warren,* 13 M.J. 278 (CMA 1982), the Court held that the sentencing authority in a court-martial may consider whether an accused falsely testified in his own defense, and, if so, whether such false testimony reflected adversely on the accused's repentence and readiness for rehabilitation. The Court also recognized that a trial counsel may argue this matter to the sentencing authority, and, when sentencing is by members, a military judge may appropriately instruct thereon. The Court further acknowledged that even in the absence of argument by trial counsel the judge may

give such instructions if it appears to him from the circumstances of the case that the court members must have determined that the accused testified falsely in his own defense and that this determination is likely to be misused for sentencing purposes. The Court in *Warren* also pointed out that not every verdict of guilty necessarily raises the spectre of false testimony. The *Warren* Court then set forth the elements which should be included in an instruction: (1) they must conclude the accused did lie under oath to the court; (2) they must find the lies to be willful and material; and (3) they should be warned that they should consider the false testimony, along with all the other circumstances, only on the issue of whether the accused can be rehabilitated and that they may not mete out additional punishment for the false testimony itself.

Assuming, *arguendo,* that it was appropriate for the military judge to give the instruction, *sua sponte,* we find that such instruction was erroneous because the military judge did not instruct the members on the last of the *Warren* elements. *United States v. Beaty,* 14 M.J. 155 (CMA 1982); *United States v. Cabebe,* 13 M.J. 303 (CMA 1982); *United States v. Baxter,* 14 M.J. 762 (ACMR 23 September 1982). In light of the punitive discharge adjudged in this case and the prior error noted, a rehearing is appropriate.

### The Vacation of the Article 15

█ Appellant contends the military judge erred in admitting into evidence a record of proceedings under Article 15, UCMJ (DA Form 2627), which reflects the vacation of a suspended sentence. He contends the exhibit does not include the commander's signature on the vacation action. *See United States v. Stewart,* 12 M.J. 143 (CMA 1981). We do not agree. The original action was taken by Captain Hovaner, B Co. 34th Eng. Bn. who was the commanding officer. Approximately two months later, the suspension was vacated by Captain Starner, Co. B., 34th Eng. Bn. Although his action does not disclose that he was the commanding officer of Co. B., we believe it

can be inferred that Captain Starner had succeeded Captain Hovaner to the command of the company.

The findings of guilty are affirmed. The sentence is set aside. A rehearing on the sentence may be ordered by the same or a different convening authority.

Judge KUCERA and Judge BADAMI concur.