UNITED STATES, Appellee,

v.

Private First Class James E. MASON,
U.S. Army, Appellant.

No. 43,210.
CM 440976.

U.S. Court of Military Appeals.

Nov. 21, 1983.

For Appellant: *Captain Marcus C. McCarty* (argued); *Lieutenant Colonel R. Rex Brookshire II, Major Paul J. Luedtke* (on brief); *Colonel Edward S. Adamkewicz, Jr., Major Raymond C. Ruppert, Major Joyce E. Plaut.*

For Appellee: *Captain Andrew D. Stewart* (argued); *Colonel R.R. Boller, Lieutenant Colonel John T. Edwards, Major Michael R. Smythers, Captain Richard P. Laverdure* (on brief); *Major John T. Meixell.*

Opinion of the Court

PER CURIAM:

In February 1981, at Mainz-Gonsenheim, Germany, appellant was tried by general court-martial for numerous offenses against the Uniform Code of Military Justice. Contrary to his pleas, he was found guilty of one specification each of resisting lawful apprehension; assault on a military policeman; and wrongful appropriation of a motor vehicle; as well as the wrongful possession, sale, and transfer of heroin on two separate occasions and the wrongful possession of diazepam, in violation of Articles 95, 128, 121, 134 and 92, UCMJ, 10 U.S.C. §§ 895, 928, 921, 934, and 892, respectively. He pleaded guilty to and was found guilty of a second specification of resisting lawful apprehension, in violation of Article 95, UCMJ, 10 U.S.C. § 895. The members of this general court-martial sentenced appellant to a dishonorable discharge, confinement for 17 years, total forfeitures, and reduction to the lowest enlisted pay grade. The convening authority disapproved the findings of guilty of wrongful appropriation of a motor vehicle, and reduced the confinement to 15 years, but otherwise approved the findings of guilty and the sentence adjudged by the court-martial. The United

States Army Court of Military Review affirmed his action in a memorandum opinion.

This Court granted review in appellant's case on the following two issues:

## I

WHETHER TRIAL COUNSEL COMMITTED PREJUDICIAL ERROR BY ARGUING THAT THE COURT MEMBERS COULD INCREASE APPELLANT'S SENTENCE SOLELY BECAUSE THE FINDINGS OF GUILTY ESTABLISHED THAT THE APPELLANT HAD LIED UNDER OATH, AND WHETHER THE MILITARY JUDGE ERRED IN INSTRUCTING THE COURT MEMBERS THAT THEY COULD AGGRAVATE THE APPELLANT'S SENTENCE IF THEY FOUND THAT HE HAD LIED UNDER OATH.

## II

WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION BY DENYING APPELLANT'S CHALLENGE OF LTC SKLAR FOR CAUSE.

We have examined the record of trial in light of the assigned errors and conclude that they are without merit.

■ In regard to the first granted issue, we note that appellant's case was tried after the decision of the Supreme Court in *United States v. Grayson,* 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978), but before the decisions of this Court in *United States v. Cabebe,* 13 M.J. 303 (1982); *United States v. Warren,* 13 M.J. 278 (1982), and *United States v. Beaty,* 14 M.J. 155 (1982). Accordingly, we have examined the argument of trial counsel and the instructions of the military judge to see if "the possibility [existed] that appellant's sentence reflected punishment for ... [his purportedly] false testimony itself." *See United States v. Beaty, supra* at 156. The limited nature of trial counsel's remarks[1] and the military judge's instructions,[2] viewed in their entirety, convince us that, although appellant received a stiff sentence, it was not imposed as a result of the members' improper consideration of this matter.

■ The second granted issue we also find to be without merit. The military judge did not deny this challenge for cause simply because Lieutenant Colonel Sklar *said* he would treat all the witnesses equally. *Cf. United States v. Harris,* 13 M.J. 288, 291 (C.M.A.1982). Instead his decision[3] was based on a careful evaluation of the manner in which this disclaimer was made. *Id.* We

---

1. Trial counsel specifically argued that this matter be considered in determining an appropriate sentence to rehabilitate appellant. *Cf. United States v. Warren,* 13 M.J. 278, 279–280 (C.M.A.1982).

2. The military judge instructed *inter alia:*

   Your determination of the kind and amount of punishment, if any, is a grave responsibility requiring the exercise of wise discretion. Although you must give due consideration to all matters in mitigation and extenuation, as well as the facts surrounding the offenses, you must bear in mind that the accused is to be sentenced only for the offenses you have found him guilty of committing.

   \*   \*   \*   \*   \*   \*

   If you find beyond a reasonable doubt that PFC Mason, while under oath today, and yesterday—it should be yesterday, made a material false statement that he did not then believe to be true, you may consider this as a matter in aggravation in determining an appropriate sentence. PFC Mason does not

have the right to make such a false statement to effect a determination of guilt or innocence.

   You should consider all of the matters in extenuation and mitigation and all of the circumstances surrounding the offenses that you found the accused guilty of. Consider the fact that he's married, and how long he's been in the service. Consider a sentence to fit PFC Mason. His background, his education, his training, his family, and you have the 2 and 2–1 in front of you. Consider possibilities for rehabilitation and reform.

3. The military judge stated:

   I am going to deny the challenge for cause. Colonel Sklar gave his honest reaction to the questions that were posed to him. Once I instructed him as to his duties in the case, he indicated that he would treat all witnesses equally, and I think his sincerity was shown by the answers that he gave after that, even as to the questions of a direct contradiction between the accused and Sergeant DeCamp. Any other challenge for cause?

note that prior to reaching this decision, he explored in depth the challenged member's association with the government witness, explained in detail the standard of impartiality required of a court member,[4] and questioned the member about his ability to meet this standard. In the absence of other circumstances in this case showing or implying bias (*cf. United States v. Harris, supra* at 292), we hold that the military judge did not abuse his discretion in denying this challenge for cause. *See United States v. Boyd,* 7 M.J. 282 (C.M.A.1979); *United States v. McQueen,* 7 M.J. 281 (C.M.A.1979).

The decision of the United States Army Court of Military Review is affirmed.

EVERETT, Chief Judge (dissenting):

I

In my view, the military judge committed prejudicial error affecting the sentence by instructing the court members, over defense objection, that they could properly increase appellant's sentence if they found that he had testified falsely during the trial. While the false testimony of an accused can properly be considered for sentencing purposes under some circumstances, *see United States v. Warren,* 13 M.J. 278, 285–86 (C.M.A.1982)—and the judge then should so advise the court members—this consideration must be linked to the possibilities of rehabilitating the accused. *United States v. Beaty,* 14 M.J. 155 (C.M.A.1982); *United States v. Cabebe,* 13 M.J. 303 (C.M.A.1982); *United States v. Warren, supra.* Here, this link was not mentioned by the judge in his instructions, and the severity of the sentence—which included 17 years' confinement—may reflect the omission.

II

Having found prejudicial error as to sentence, I now turn to the issue of whether such error occurred as to findings.

In civilian life the pool of potential jurors is considerably greater than the number of qualified court members available in the military community under the standards prescribed by Article 25 of the Uniform Code of Military Justice, 10 U.S.C. § 825. Presumably, Congress took this into account when it provided only one peremptory challenge to the Government and to each accused in a trial by court-martial. *See* Article 41(b), U.C.M.J., 10 U.S.C. § 841(b). However, for the very reason that peremptory challenges are sparse, it would seem that the grounds for challenges for cause should be liberally construed; and the Manual for Courts-Martial specifically directs that a "military judge ... should be liberal in passing on challenges." Para. 62*h* (2), Manual for Courts-Martial, United States, 1969 (Revised edition).

Unfortunately, however, this exhortation often has been ignored. Indeed, it seems evident to me that some military judges are reluctant to uphold challenges for cause in situations where they should do so "in the interest of having the trial and subsequent proceedings free from substantial doubt as to legality, fairness, and impartiality." Para. 62*f,* Manual, *supra.* I surmise that there are several reasons for this reluctance. Probably the most important is that military judges fear that sustaining too many challenges for cause may reduce the number of court members below the statutory minimum and thereby require appointment of additional members and that this, in turn, may lead to delay and inconvenience. A second reason for the reluctance to uphold challenges for cause may be a concern on the part of military judges that the challenged court members may construe their excusal from the court-martial as an insult to their fairness and integrity.[1]

---

4. The military judge also instructed the members prior to findings that they "should carefully scrutinize ... every matter in evidence which tends to indicate whether the witness is worthy of belief."

1. Before the *voir dire* on a challenge for cause, the military judge should explain to the members that they are being questioned to determine whether there is any particular reason that they should not serve in the particular trial. He should also emphasize that allowing a challenge for cause should not be considered as a determination that the member is unfair or

In any event, too often we must review cases where a challenged court member had extensive prior knowledge about the case or prior acquaintance with the witnesses but was allowed to sit after he had been "rehabilitated" by the judge's questions. These typically are leading questions which seek to elicit from the challenged member answers to the effect that, despite his prior contacts with the events or persons involved in the case, he nonetheless can be completely objective and impartial. Without in any way impugning the sincerity of the answers given on *voir dire* by a member under such circumstances, I observe that he or she often is promising to accomplish mental feats which are virtually impossible—namely, wiping out of one's mind pertinent information which is deeply embedded therein.

While recognizing the practical considerations which are involved, I cannot accept the conclusion that the prevailing practice is fair to accused servicemembers or conducive to trust in military justice. Moreover, alternatives do exist. In the first place, the convening authority and his staff can do a better job of screening out, and not appointing to courts-martial, those persons who, because of their duty assignments—*e.g.*, police or law enforcement—will almost inevitably be challenged for cause by the defense. Likewise, if in a particular case it appears clear that a prospective court member has had such an extensive prior connection with the accused or with a potential key witness that a challenge for cause would be likely, then that person should not be appointed to sit on that case.[2]

Second, unlike a civilian jury where a certain fixed number of jurors must sit, courts-martial are subject only to a requirement that a minimum number of court members be present. So long as that minimum number of members remains, allowing challenges for cause will not prevent the trial from continuing. Thus, the convening authority should appoint enough members

to each court-martial to allow trial to proceed even if a reasonable number of challenges for cause are sustained and peremptory challenges are exercised. In addition to appointing an adequate number of members at the outset, the convening authority can consider predesignating alternate court members to serve on the court if at any time the number of members goes below the minimum required. If this is done and the alternate members are advised in advance of the contingency under which they may be called to serve, some of the disruption, delay, and inconvenience may be avoided that might otherwise result when challenges reduce the number of court members below the statutory minimum. In the relatively few instances when most of the potential court members in a command are tainted by close contact with a case awaiting trial, the convening authority should consider obtaining court members from another command or, if more convenient, even from another armed service. *See generally* Art. 25.

Furthermore, in deciding whether to oppose a defense challenge for cause, trial counsel should consider whether he is creating an appellate issue without any corresponding gain for the Government. Similarly, in ruling on challenges for cause, military judges should keep in mind the Manual's direction to "be liberal in passing on challenges," para. 62*h*(2), and should be sensitive to any possibility that retention of a challenged member on the court-martial may create a perception of unfairness with respect to the trial.

Turning to the circumstances of the case at bar, I am not persuaded that any "military necessity" required denial of the challenge for cause. Lieutenant Colonel Sklar, the challenged member, had an extensive prior relationship with the witness on whom the entire government case would depend. Consequently, Sklar—as he conceded on *voir dire*—would tend to believe the testi-

---

biased—only that, in the particular trial, it appears better to proceed with other members.

**2.** If the convening orders have already been promulgated, then an amending order can be

issued to delete from the court membership the person whose previous contacts with the case would lead to a challenge for cause.

mony of that witness unless there was some evidence to the contrary. Apparently, no defense witness enjoyed with this member the same advantage of beginning with a presumption of credibility.

Under these circumstances, the military judge should have excused Lieutenant Colonel Sklar from the court-martial. The failure to do so tainted the findings of guilty that later were rendered by the court members, for it created not only the image of unfairness in these proceedings, but also a substantial possibility that this image would become a reality.