**UNITED STATES of America,**
**Appellee,**

**v.**

**James Ronald MOORE, Appellant.**

**No. 72–2322.**

United States Court of Appeals,
Fourth Circuit.

Argued May 8, 1973.

Decided Sept. 26, 1973.

James J. Gitomer, Baltimore, Md. (Howard L. Cardin, Baltimore, Md., on brief), for appellant.

Paul M. Rosenberg, Asst. U. S. Atty. (George Beall, U. S. Atty., D. Md., and James M. Kramon, Asst. U. S. Atty., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and CRAVEN and BUTZNER, Circuit Judges.

BUTZNER, Circuit Judge:

James Ronald Moore appeals from a judgment of conviction, entered upon a jury verdict, for knowingly receiving a stolen motor vehicle. He contends that the admission of certain testimony violated his fifth amendment privilege against self-incrimination and that the district court abused its discretion in sentencing him to a four year term of imprisonment. We affirm.

I.

FBI agents arrested Moore on June 20, 1972. After the agents advised him of his *Miranda* rights, Moore voluntarily agreed to answer their questions. At trial, Agent Nelson's version of this interrogation was substantially as follows. Moore told Nelson that he had owned the stolen automobile for four months, that he had driven it approximately twelve thousand miles, and that he ob- tained it from a man named Ronald Harris in exchange for a $4500 gambling debt. Moore also said that Harris occasionally lived at 3401 Wakefield Avenue in Baltimore, the same address found on Moore's driver's license. He described Harris, whom he had met in New York City, as approximately thirty-two years old, and he explained that Harris was actually an alias used by a man named James Bryant. In response to other questions, Moore said that he had obtained the registration card for the auto from Harris, that he had personally checked the car's registration with employees at the Maryland Division of Motor Vehicles, and that he expected to see Harris in Baltimore in about a week.

The agent testified that Moore failed to provide details of his story when the interrogation got more specific. Moore did not answer questions asking (1) why he felt it necessary to check the registration with the Division of Motor Vehicles, (2) whether he could give a more specific description of Harris, (3) why Harris would pay a $4500 debt with a car worth more than $4500, and (4) when he had last seen Harris. The district court, holding that Moore never invoked the fifth amendment, admitted the agent's testimony that Moore failed to respond to these questions, but he would not permit the agent to interpret Moore's lack of response. Moore contends that the admission of this testimony violated his fifth amendment privilege against self-incrimination because it allowed the government to introduce into evidence his refusal to make a statement to the FBI.

Federal courts have long excluded any prosecutorial comment on a defendant's failure to testify in his own behalf. Wilson v. United States, 149 U. S. 60, 13 S.Ct. 765, 37 L.Ed. 650 (1893); *see also* Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). More recent cases have extended this ban to exclude evidence of, or prosecutorial comment on, a defendant's failure to explain his conduct to police

officials. Miranda v. Arizona, 384 U.S. 436, 468 n.37, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *accord* United States v. Nolan, 416 F.2d 588, 594 (10th Cir.), cert. denied, 396 U.S. 912, 90 S.Ct. 227, 24 L. Ed.2d 187 (1969); State v. Griffin, 120 N.J.Super. 13, 293 A.2d 217, 219 (App. Div.), pet. for certification denied, 63 N.J. 73, 299 A.2d 71 (1972). Therefore, if Moore had remained altogether silent, or if in declining to answer certain questions he had invoked his fifth amendment privilege, or if in any other way he had indicated he was relying on his understanding of the *Miranda* warning, evidence of his silence or of his refusal to answer specific questions would have been inadmissible.

■ Moore, however, chose not to remain silent, and he never invoked his fifth amendment privilege to any question. Instead, he gave a voluntary statement to FBI agents. His statement, whether exculpatory or incriminating, was admissible as a verbal act explaining the reasons for his possession of recently stolen property. *Cf.* United States v. Sharpe, 452 F.2d 1117, 1120 (1st Cir. 1971); 6 Wigmore, Evidence §§ 1772, 1781 (3d ed. 1940). The statement was not offered to prove the truth of the assertions in it. To the contrary, the government introduced it on the theory that the vague and improbable story raised an inference that Moore knew the vehicle was a stolen automobile. The government argues that Moore's failure to respond to questions asking for details of his story was an integral part of his statement and could properly be considered by the jury in assaying Moore's explanation of how he acquired the stolen car. Moore urges us to treat each question separately and to hold that his silence when he was asked a specific question was sufficient to invoke his fifth amendment privilege as to that question.

■ We are not persuaded by Moore's argument. Moore, waiving his fifth amendment privilege, agreed to answer the agent's questions, but several times in a continuing interrogation, he did not respond when pressed for details of his story. He never gave any indication that he desired to invoke the fifth amendment with respect to the questions which he did not answer, and in no way did he link his silence to the *Miranda* warning.[1] His omission of details, in the face of questions that he had voluntarily agreed to answer, was an indicia of the reliability of the information he was offering, and evidence of his silence was, therefore, relevant to that issue. Because the only reasonable explanation of Moore's silence was inability to supply the requested details, the statements implicit in the agent's questions and Moore's silence were tacit admissions that Moore could not give a better description of Harris, or expand on his story of how he acquired the car. *See* 4 Wigmore, Evidence §§ 1071, 1072 (Chadbourn Rev. 1972). We hold, therefore, that the district court did not err in admitting the agent's testimony that Moore failed to respond to certain questions.

## II.

Before sentencing Moore, the district judge made the following observation:

"The jury was out for less than an hour and a half yesterday, Mr. Moore, and found you guilty as charged. I would agree completely with the jury verdict. Were it only a case of your being convicted of this offense, I would impose some sort of a sentence but not a very long one. But we have more than that here. You took the stand in your own defense, as you have every right to do, but you testified falsely under oath in an attempt to exculpate yourself from this crime.

---

1. Moore testified in his own defense, but he did not claim that he failed to respond to some of the questions because he was relying on the *Miranda* warning or the fifth amendment. Instead, he disputed the accuracy of the agent's account. He testified that he had talked with the agent because he "had nothing to hide."

The Court should take that into account in deciding what is the proper sentence in a case of this sort."

The judge also noted that Moore was 29 years old, that he had served honorably in the air force for five years, and that he had worked for a charitable agency in Baltimore. On the other hand, the court observed, Moore apparently was involved in the drug traffic and he moved with a "fast crowd." He had no criminal record except for a pending state charge which he expected would be dismissed. Considering all these factors, the district court decided that Moore should have a considerable prison sentence but less than the statutory maximum, and it sentenced him to a four year term of imprisonment.

Moore claims that the district court abused its discretion by increasing his sentence because of its belief that he had testified falsely in his own behalf. He argues that the court's comments indicate that it was sentencing him for the crime of perjury as well as the offense for which he had been convicted. His assignment of error requires us to reconsider Peterson v. United States, 246 F. 118 (4th Cir. 1917), cert. denied, 246 U.S. 661, 38 S.Ct. 332, 62 L.Ed. 927 (1918), where a similar argument was rejected. There the sentencing judge imposed a severe sentence mainly because he was convinced that Peterson had suborned perjury. On appeal, we held that the judge could take this conduct into account when fixing a penalty suitable to the offense.

■ A sentencing court has broad discretion so long as the sentence it imposes is within the statutory maximum. United States v. King, 420 F.2d 946, 947 (4th Cir.), cert. denied, 347 U.S. 1017, 90 S.Ct. 1253, 25 L.Ed.2d 432 (1970). To enable it to make an informed decision on punishment, the court "may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information [it] may consider, or the source from which it may come." United States v. Tucker, 404 U.S. 443,

446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972) (dictum). The court, however, may not rely on evidence that was obtained by unconstitutional means, Armpriester v. United States, 256 F.2d 294, 297 (4th Cir.), cert. denied, 358 U.S. 856, 79 S.Ct. 88, 3 L.Ed.2d 90 (1958) (dictum), or prior convictions that have been vacated because they were constitutionally defective. United States v. Tucker, *supra.*

■ The rule that a sentencing court may consider the defendant's credibility as a witness has been rejected by the District of Columbia Circuit and has been criticized by some commentators. *See* Scott v. United States, 136 U.S. App.D.C. 377, 419 F.2d 264, 268 (1969); Note, The Influence of the Defendant's Plea on Judicial Determination of Sentence, 66 Yale L.J. 204, 211–17 (1956). Two other circuits, however, recently have affirmed that the sentencing judge may properly take into consideration, when deciding the severity of punishment, his finding that the defendant testified untruthfully. United States v. Cluchette, 465 F.2d 749, 754 (9th Cir. 1972); United States v. Wallace, 418 F. 2d 876, 878 (6th Cir. 1969). The latter conclusion is consistent with Williams v. New York, 337 U.S. 241, 244, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), in which the Court held that a sentencing judge may consider evidence of crimes for which the defendant has not been convicted. Having reexamined the reasons for and against the rule and the record in this case, we decline to hold that the district court erred in sentencing Moore.

■ We caution, however, that sentencing judges should not indiscriminately treat as a perjurer every convicted defendant who has testified in his own defense. Witnesses induced by sordid motives or fear have been known to fabricate accusations with such guile that even conscientious triers of fact have been misled. Moreover, some essential elements of proof of criminal conduct, such as knowledge, intent, malice, and premeditation are sometimes so subjec-

tive that testimony about them cannot be readily categorized as true or false. Judges must constantly bear in mind that neither they nor jurors are infallible. A verdict of guilty means only that guilt has been proved beyond a reasonable doubt, not that the defendant has lied in maintaining his innocence. It is better in the usual case for the trial judge who suspects perjury to request an investigation. Then, if the facts warrant it, the United States Attorney may institute prosecution for this separate and distinct crime.

Affirmed.

CRAVEN, Circuit Judge (concurring):

I join Judge Haynsworth and Judge Butzner as to Part I without reservation. I would dissent from Part II but for Peterson v. United States, 246 F. 118 (4th Cir. 1917), cert. denied, 246 U. S. 661, 38 S.Ct. 332, 62 L.Ed. 927 (1918). I think this outmoded decision, decided wrongly before I was born, is binding upon a panel of our court. I would en banc the case, overrule *Peterson*, vacate the sentence, and remand for resentencing.

I am very strongly of the opinion that a trial judge may not properly impose a harsher sentence upon a defendant because he thinks the defendant lied on the witness stand. Such a practice will inevitably chill and hamper, if not ultimately destroy, the right to testify in one's own defense. It seems to me unconscionable that a defendant must run the risk of conviction of the offense charged and at the same time run the gauntlet of disbelief.

Two so-called justifications for imposing a lengthier sentence when the trial judge believes that the defendant lied on the witness stand are urged: (1) as punishment for committing the substantive offense of perjury; (2) because the commission of perjury adversely reflects upon the defendant's character and, therefore, dims his prospects for rehabilitation. *See* Note, The Influence of the Defendant's Plea on Judicial Deter-

mination of Sentence, 66 Yale L.J. 204, 212 (1956). I find neither persuasive.

The first justification is, I believe, contrary to basic concepts of the administration of justice. Since the offense of perjury is properly punishable in a separate criminal proceeding, to allow a summary adjudication of guilt by the court denies the defendant every constitutional and procedural safeguard to which he is entitled and which is inherent in indictment and trial. This is judgment by hunch—without accusation and without opportunity to defend. I fully agree with the District of Columbia Circuit's conclusion that this argument "deserves emphatic rejection." Scott v. United States, 136 U.S.App.D.C. 377, 419 F.2d 264 (1969).

As for the second justification, which is the one enunciated in *Peterson,* I find it unpersuasive. Implicit in the majority opinion, and in the conduct of the district judge, is the assumption that one who lies under stress has less capacity for rehabilitation than does one who pleads not guilty and fails to testify. I think that is a better question for psychiatrists than it is for judges and that a practice which rests upon such an assumption is a questionable one. To lawyers there is a vast difference between pleading not guilty and actually so testifying, but laymen have some difficulty making the distinction. *See generally,* Note, *supra,* 66 Yale L.J. at 216.

Judge Bazelon thinks that a guilty man may sincerely repent his crime and yet protest his innocence. He suggests that prosecutors very rarely institute perjury prosecutions because of their understanding of this paradox. *See Scott, supra,* at 269.

I suggest one more reason why a trial judge should never impose additional punishment because of his belief that a defendant lied in his own defense: he may be wrong. Even juries are sometimes wrong. Truth is, indeed, stranger than fiction, and every one of us knows of at least one cock-and-bull story, believed by no one, that turned out to be true.

"The Government argues that the appellant 'has no constitutional right to lie.' . . . Of course a defendant has no constitutional right to lie, however much we may sympathize with his too human temptation. But the defendant does have a right to testify in his own defense. In doing so, he risks the jury's disbelief. If he in fact fails to convince the jurors, conviction and punishment will follow. If the Government for whatever reason concludes that prosecution for perjury is appropriate, he risks punishment for that as well. To allow the trial judge to impose still further punishment because he too disbelieves the defendant would needlessly discourage the accused from testifying in his own behalf." *Scott, supra,* at 269.