THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
STEPHEN L. GALATI, Defendant-Appellant.

Second District   No. 78-423

Opinion filed August 28, 1979.

Mary Robinson and David S. Morris, both of State Appellate Defender's Office, of Elgin, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Robert L. Thompson, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

The defendant, Stephen L. Galati, was convicted of one count of theft over $150 and one count of theft under $150 in a jury trial. He elected to be sentenced under the 1973 Unified Code of Corrections and was sentenced to 2-6 years in the penitentiary. He appeals, contending that the trial judge enhanced his sentence based upon her belief that he had committed perjury in the trial; and also improperly required him to elect sentencing either under the laws that existed at the time of this offense or under the law in effect after the 1977 amendment to the Unified Code of Corrections (Ill. Rev. Stat. 1978 Supp., ch. 38, par. 1008—2—4(b)), without advising him of the particular sentence which the court would impose under each act.

Defendant does not deny that he was advised of his right to elect, but argues that fundamental fairness requires that his decision be reasonably comprehensible and that this requires the court to advise the defendant of the sentence which would be imposed under either act so that the defendant can make an informed election. We disagree.

The record shows a full explanation by the judge, of the range of sentences possible under both acts. Following this she asked whether the defendant had any question about the differences in the permitted sentences and the record shows that the defendant responded that he did not.

■■ We have recently held that the sentencing judge is not required to disclose, in advance, the particular sentence which he would impose following a defendant's election. (*People v. Kelly*, 75 Ill. App. 3d 695

(1979).) Thus, there is no requirement of law that the defendant be given two sentences from which to choose but merely a choice between the right to be sentenced under the law in effect at the time of the commission of the crime or that in effect at sentencing. See also *People v. Dozier*, 67 Ill. App. 3d 611 (1979); *People v. Wilford*, 54 Ill. App. 3d 706 (1977).

Whether the sentencing judge improperly enhanced the sentence because of her belief that defendant had committed perjury at trial requires a review of the record.

Galati was charged with the theft together with co-defendants Anthony Panariella, James Rogers, and Phillip Leonardi. As a result of severance motions Panariella and Galati were jointly tried, while Rogers and Leonardi were each tried separately. In defendant's trial an officer testified that the car in which the four co-defendants were riding was observed by a foot patrolman to have license and taillight violations. When the car was later intercepted it was off the road with its lights off and engine running. Two of the men were out of the car "working on" the subject of the thefts, a tandem bicycle and a Mo-Ped. Galati was in the front passenger seat and could not produce an identification; but informed the policeman that they had picked up the tandem bicycle from a friend and that they had previously been in a bar in Chicago drinking. The officer testified that Galati "appeared very tired and had glassy eyes" but that he walked "normally" and appeared "neat." On further investigation it was noted that the rear-wheel assembly of the bicycle had been partly disassembled. Other officers arriving at the scene found a Mo-Ped license plate on the floor of the open trunk. All four were then placed under arrest and informed of their *Miranda* rights. It was later learned that the bicycle and Mo-Ped had been stolen.

At the police station Galati informed the officers that the car in which they were riding was owned by a friend of Galati's and had been taken with permission; that he had fallen asleep after leaving the bar and had no knowledge of the alleged theft. At a later time Galati called the station seeking the release of the car and his personal belongings located in the trunk. The officer testified that defendant told him at that time that the Ford was owned by him.

Leonardi testified at Galati's trial that all four had been at a bar drinking; that after they left the bar they were driving to a friend's house; that defendant and the others fell asleep on the way; that Leonardi then decided to "make some money" and drove through the neighborhood until he saw the bikes in an alley. He said that as he was putting the tandem bicycle in the back seat of the Ford, Panariella woke up and tried to pull the bicycle out of the car but that Leonardi resisted, and at that moment the squad car pulled up. According to Leonardi, Galati was

sleeping in the car along with Panariella during the theft and was not aware of Leonardi's intentions.

Galati testified that he fell asleep in the car, having become intoxicated while in the bar and did not wake up until Officer Rehling began approaching the car. He denied that he told Rehling that he owned the car.

In rebuttal, an officer testified that Leonardi told him on the night of the theft that all four defendants were involved, with Galati acting as a lookout as the other three took the items. Another officer testified in corroboration of this conversation.

In the sentencing hearing the court had before it a probation department report in which the defendant had continued to state that he had been sleeping throughout and brought in the additional information that in addition to the drinking he was using heroin that evening and that he planned to enroll in a detoxification program after he was arrested for the theft. The probation report concluded that the defendant "wished to appear cooperative but was, in fact, somewhat manipulative and misleading." Examples were given as to several statements made by the defendant as to his work record and relations with his family and friends which, on investigation, were found to be false. In arguing that defendant should not be admitted to probation, the prosecutor emphasized the report heavily. He stated that defendant consistently lied during bond hearings, to the probation officer, and in his trial. Before passing sentence the trial judge said that she agreed with the evaluation of the probation officer and stated:

> "I observed your testimony at the trial. I didn't believe it at the time you testified, and I do not regard it now as true, and the most important thing, you are a person I think that probation is not suitable because this offense was committed while the Defendant was on probation for delivery of a controlled substance. My view of your approach to life at the moment is that I don't think probation would do anything for you or for the community."

She then committed the defendant to the Illinois Department of Corrections to serve a sentence of not less than two years nor more than six years.

After imposing the sentence the defendant protested and the court commented:

> "I considered personally that I didn't hear the Defendant's testimony as a juror, I wasn't the trier of the facts. The jurors didn't accept the testimony as probable. I accepted the verdict of the jury. As I have stated, I do not think he would successfully complete his probation because it has been tried before. I do not think

you are truthful, Mr. Galati, and I do not think you testified truthfully."

The record includes a transcript of the sentencing hearing of the codefendant, Anthony Panariella, who was sentenced to 30 months' imprisonment after electing to be sentenced under the new act. He was sentenced on May 12, 1978, approximately a month after this defendant's sentencing hearing. At that hearing the court made the following comments:

"Mr. Galati took the stand and testified in his own behalf. I told him at his sentencing it was my opinion that it was untruthful testimony under oath, which is perjury. I am aware that both of you called Mr. Leonardi to the stand. I didn't believe Mr. Leonardi's testimony either, but at least you were somewhat removed from that. At least you had the grace yourself not to take the stand and tell an untruth. You didn't take the stand at all. I realized that you probably had a very practical motive for doing that because with the prior felonies you might have been impeached if you had taken the stand, but I do have a very low tolerance for perjury, and I credit you with the fact that you did not commit it in this trial yourself."

It also appears from the records before us that the defendant, with the exception of a four-year-old prior conviction for delivery of a controlled substance which resulted in a six months work release and probation, had no substantial record except for minor traffic related cases and a misdemeanor charge for resisting arrest under which he served four days in the county jail. Panariella had a record of seven prior convictions, including four felonies involving property, bail-bond violations, an attempt burglary conviction resulting in a prison sentence, as well as numerous violations of probation.

■■■ Defendant argues that the sentence imposed on him included punishment for what the court believed was perjury committed during the trial, a separate, unproved criminal offense. He concedes, however, that a sentence may be based on all relevant circumstances including defendant's conduct and demeanor in court; and that a mere expression of disbelief in the defendant's testimony would not, by itself, amount to an abuse of discretion. Where the line is to be drawn becomes the issue. It has been noted:

"[T]he judge in determining the character and extent of punishment is not limited to considering only information which would be admissible under the adversary circumstances of a trial. While it must exercise care to insure the accuracy of information considered and to shield itself from what might be the prejudicial effect of improper materials (*People v. Crews*, 38 Ill. 2d 331), 'the

court is not confined to the evidence showing guilt, for that issue has been settled by the plea. The rules of evidence which ordinarily obtain in a trial where guilt is denied do not bind the court in its inquiry. It may look to the facts of the [crime], and it may search anywhere, within reasonable bounds, for other facts which tend to aggravate or mitigate the offense. \* \* \*' " *(People v. Adkins,* 41 Ill. 2d 297, 300-301 (1968).)

Moreover, a sentencing judge has the authority "to evaluate carefully a defendant's testimony on the stand, determine—with a consciousness of the frailty of human judgment—whether that testimony contained willful and material falsehoods, and, if so, assess in light of all the other knowledge gained about the defendant the meaning of that conduct with respect to his prospects for rehabilitation and restoration to a useful place in society." *United States v. Grayson,* 438 U.S. 41, 55, 57 L. Ed. 2d 582, 592, 98 S. Ct. 2610, 2618 (1978). See also *People v. Moody,* 66 Ill. App. 3d 929, 931-32 (1979).

■■ ■ To the extent that *People v. Cowherd,* 63 Ill. App. 3d 229, 235 (1978), principally relied upon by the defendant, holds that the reasoning of *Grayson* is inapplicable to Illinois sentencing procedures, we must disagree. It is, of course, true as noted in *Cowherd* that in *Grayson* the United States Supreme Court held that it was not unconstitutional for the sentencing judge to give consideration at sentencing to perjury at trial even though it was criminal conduct for which defendant had not been tried and convicted; but we cannot agree that the reasoning of the majority in *Grayson* is inapplicable on the basis that Federal rules of procedure applicable to a sentencing hearing are broader than in Illinois. The Illinois Unified Code of Corrections also requires a judge in imposing sentence to, among other things, "permit the recognition of differences in rehabilitation possibilities among individual offenders" (Ill. Rev. Stat. 1977, ch. 38, par. 1001—1—2(a)); and to consider a presentence report which may include information as to the history and general background of the defendant as well as "any other matters that the investigatory officer deems relevant or the court directs to be included." Ill. Rev. Stat. 1977, ch. 38, par. 1005—3—2(a)(3).

The record, in any event, supports the conclusion that the sentencing followed the requirements of the Illinois statutes in determining the rehabilitation potential of the defendant, and does not indicate that the trial judge, in effect, sentenced the defendant for the additional offense of perjury. The sentencing judge could properly have considered defendant's truthfulness while testifying in his own behalf as "probative of his attitudes towards society and prospects for rehabilitation \* \* \*." *(Grayson,* 438 U.S. 41, 50, 57 L. Ed. 2d 582, 590, 98 S. Ct. 2610, 2616.) Also, the unchallenged presentence report indicated defendant's untruthfulness

in responding to the probation officer, and the court could properly consider that factor as bearing on the sentence.

■ Finally, we do not conclude from the record of the sentence of the co-defendant that there was the substantial disparity in the sentence meted to the co-defendant which would justify a reduction of sentence under the provisions of Supreme Court Rule 615(b)(4) (Ill. Rev. Stat. 1977, ch. 110A, par. 615(b)(4)). The trial judge was in a better position than we to determine the punishment. We conclude that her judgment was based on proper factors and that there was no abuse of discretion. (*People v. Perruquet*, 68 Ill. 2d 149, 154 (1977).) The judgment is therefore affirmed.

Affirmed.

GUILD, P. J., and WOODWARD, J., concur.