STATE OF NORTH CAROLINA v. GEORGE HARRIS THOMPSON

No. 305PA83

(Filed 2 February 1984)

1. Criminal Law § 138— perjury as aggravating factor in sentencing

Perjury at trial often indicates a defendant's continued defiance of society's system of laws and reflects on his potential for rehabilitation and is thus "reasonably related to the purposes of sentencing" within the meaning of G.S. 15A-1340.4. Therefore, perceived perjury by defendant may be used as an aggravating factor to be weighed in considering the sentence to be imposed upon a defendant. However, in view of some of the potential dangers inherent in this particular factor and also of its peculiar nature, a trial judge should refrain from finding perjury as an aggravating factor except in the most extreme cases.

2. Criminal Law § 138— perjury as aggravating factor in sentencing—sufficiency of evidence

The trial court did not err in finding that the aggravating factor that defendant had committed perjury during the trial had been proven by a preponderance of the evidence where defendant was unable to explain how, consistent with his alibi defense of having been in Charleston, South Carolina

during the entire month of August 1981, his signed affidavit of indigency, dated 18 August 1981 and sworn to before a deputy clerk in Cleveland County, North Carolina, came into being, and where his knowledge of many of the technical facts concerning the crime, as evidenced by his original confession to the police, belied his later disavowal of that statement at trial.

Justice FRYE dissents.

ON defendant's petition for discretionary review of decision of the Court of Appeals, 62 N.C. App. 38, 302 S.E. 2d 310 (1983), which found error in the trial before *Thornburg, Judge,* at the 1 March 1982 Session of CLEVELAND Superior Court.

Defendant was charged in an indictment, proper in form, with the armed robbery of a jewelry store. He entered a plea of not guilty.

At trial, the State offered evidence which tended to show that on 27 August 1981 at approximately 11:00 a.m., two black men entered D. Phillips Diamonds, Inc., in Shelby, North Carolina, and asked to look at pre-engagement rings. One of the men was wearing a flannel shirt and a hat. Shortly thereafter, one of the men pulled a gun and the two of them proceeded to rob the jewelry store. The men then ran out of the store carrying a cardboard box. According to a police officer who arrived at the scene, the men jumped into a green vehicle in which a driver was apparently waiting for them. The two robbers dropped a considerable amount of jewelry as they ran toward the car. Police officers failed to apprehend the fleeing car.

On 3 December 1981, defendant was arrested on unrelated charges and taken to the police station. At that time, after being properly warned of his rights and after executing a written waiver of his rights, defendant made an oral statement to Lieutenant Ledbetter of the Shelby Police Department. Defendant then agreed to record the statement and did so in the presence of Officer Oates. The recorded statement was then typed and given to defendant for his examination. After reading the statement, defendant accompanied Officers Oates and Ash to the office of the Clerk of Superior Court where the clerk, Mrs. Ruth Dedmon, asked defendant if he had read the statement and he replied in the affirmative. Mrs. Dedmon asked defendant to examine the statement in her presence, which he did. She then asked defend-

ant if that was his statement and he replied that it was. Defendant thereupon signed the written statement before the clerk.

Prior to admitting defendant's statement into evidence and after conducting a proper voir dire hearing, the trial court made findings of fact and conclusions of law and determined that the statement was given freely, knowingly and voluntarily.

In his statement, defendant related that on 27 August 1981 he, Ricky Howell, Ricky Woods and a girl called "Smiley" were at the Burger King in Shelby, North Carolina "getting things together." They then parked the green automobile in which they were riding across the street from the "D. Phillips Diamonds" jewelry store. Smiley remained in the automobile while defendant took a position outside the store as a lookout and Woods and Howell entered the store. After a short time Woods and Howell ran out of the store. Howell had a box in his hands, and some jewelry was dropped as the two men ran to the car. Defendant noticed a police car as he joined the other parties in fleeing the scene. They proceeded to Cherryville, North Carolina, where Ricky Howell sold some of the jewelry to a man whom defendant could only identify as "John." Defendant slept in John's garage for two nights and finally called his brother "Nub" to pick him up at Shoney's in downtown Cherryville. John gave defendant and Ricky Woods a ride to Shoney's where defendant's brother picked them up. Defendant stated that the weapons used in the robbery were a .25 caliber and a .38 caliber pistol. He also averred that he never received anything from the robbery, but Ricky Woods received twenty or thirty rings.

After making the inculpatory statement, defendant accompanied the officers to Cherryville in an effort to locate John's residence; however, he was unable to direct the officers to the residence. On cross-examination, Officer Oates stated that there was not a Shoney's in Cherryville, but that there was one in Gastonia. He further stated that after 27 August he saw defendant once or twice a week.

Defendant's defense was alibi and he offered witnesses who testified that he was in Charleston, South Carolina, at the time of the robbery. His mother stated that 27 August was her birthday and that on that day in 1981 she received a long distance tele-

phone call from defendant and her daughter Judy Currance who lived in Charleston, South Carolina.

Judy Currance testified that defendant was at her home in Charleston, South Carolina, on 27 August 1981 and that she and defendant called her mother on that day. She further testified that her brother was there during all the month of August.

Defendant testified that he was in Charleston, South Carolina, the whole month of August 1981. However, he admitted that he signed the inculpatory statement offered into evidence as part of the State's case, and he admitted that the voice on the tape recording was his. He further admitted that he went before the Clerk of Superior Court of Cleveland County and told her the statement he signed was true. Defendant testified that he made the statements because the officers threatened him and told him that Ricky Howell had already involved him. He maintained that he had made up the entire story in order to appease the officers and "to get off from the police station." When questioned concerning his knowledge of various details surrounding the crime, defendant insisted that the officers gave him the details prior to eliciting the statement from him. We quote the following pertinent portions of defendant's testimony:

Q. In your statement, what did you say one of the boys was wearing, do you remember?

A. I didn't say. I said Ricky Woods had a army jacket on.

Q. Army jacket on. And why did you say he had an Army jacket on?

A. Well, from what I had got from them, you know. I was just going on, really, what they had said, you know, but all this that I said on the tape, it ain't nothing but made up.

Q. What size box did you say it was?

A. It wasn't bigger than a shoe box.

Q. How did you get that size?

A. I just said it.

. . . .

Q. . . . . Well, where did you get the information about the green car?

A. From them.

.   .   .   .

Q. I see. Did he tell you anything else?

A. I don't remember.

Q. Well, then you had to be there to see them run down across that yard and drop all that jewelry, then, didn't you?

A. Huh uh. I wasn't there. That's some made up material that I just thought.

Q. In other words, you just made that up and it just happened to be exactly what Lieutenant Wall told on the stand. You made it up on December the third and it just come out of the blue sky, isn't that right?

A. They were asking me questions. I couldn't remember it all, but nevertheless, it was just questions leading to the robbery, you know. Like they asked me a question and I tried to answer.

Defendant was cross-examined concerning his alibi defense and particularly concerning an affidavit of indigency signed by him on 18 August 1981 as follows:

Q. Mr. Thompson, how long had you been down in Charleston on the twenty-seventh of August?

A. How long?

Q. Yes, sir.

A. Well, I stayed that whole month.

Q. That whole month of August.

A. Yeah.

Q. And that's 1981.

A. Yeah.

Q. August, 1981, all right, and when did you say you left?

A. It was about the first or second of September.

Q. First or second of September. Now, you're sure of those dates?

A. Yes.

Q. All right, now, Mr. Thompson, when you—can you recognize your signature?

A. Yeah.

Q. I want you to look on that affidavit of indigency there and see if that's your signature down there.

A. Yeah.

Q. Let's see now. Then right above there it says on the eighteenth day of August, 1981, you was here in Cleveland County at this courthouse. Now, you look at that and see if that's what that says there.

A. That's what it say.

    ·   ·   ·

Q. Did you fill that on the eighteenth day of August, 1981, in that particular case?

A. I can't remember this.

Q. I'll say, is that your affidavit there?

A. I guess so.

Q. Did you swear to it that day in front of the Clerk?

A. Swear to what?

Q. This affidavit. It says right here, "Sworn to and subscribed before me this eighteenth day of August, 1981, Judy Wright, Deputy Clerk of Superior Court". Now, did you swear to that in front of Mrs. Wright?

A. I don't remember talking to no Miss Wright. I remember talking to Mrs. Spangler.

Ms. Judy Wright, Deputy Clerk of Cleveland County Superior Court, testified that her signature was on the affidavit of indigen-

cy and that "the name of George H. Thompson appears on it as having been sworn before [her] on . . . August the 18th, 1981."

The jury returned a verdict of guilty of armed robbery, an offense which carries a maximum sentence of forty years. The trial judge held a sentencing hearing pursuant to the provisions of Article 81A, and found four aggravating factors: (1) that the offense was committed for pecuniary gain; (2) that a co-defendant was armed with or used a deadly weapon at the time of the offense; (3) that the defendant had prior convictions for offenses punishable for more than sixty days imprisonment; and (4) that the "defendant deliberately presented during the course of the trial, evidence which he knew to be false about his presence on the day in question and deliberately presented false evidence concerning the statement attributed to him and obviously found by the jury to be false." The court found as a single mitigating factor that the defendant played a minor role in the commission of the offense. The court concluded that the aggravating factors outweighed the mitigating factor and thereupon imposed a sentence of imprisonment of twenty years, a sentence which exceeded the statutory presumptive sentence.

The Court of Appeals in a decision written by Judge Hill, concurred in by Judge Arnold with Judge Becton concurring in the result, held that the trial judge erred in finding the first two aggravating factors and remanded for resentencing. Judge Becton in his concurring opinion stated that an additional basis existed for a resentencing hearing in that the trial court erred in finding as an aggravating factor that defendant did not testify truthfully. Defendant gave notice of appeal and petitioned for discretionary review. On 27 September 1983, we dismissed defendant's notice of appeal and allowed defendant's petition for discretionary review, with review limited to the trial judge's finding of the above-named fourth aggravating factor, the presentation of false testimony by defendant.

*Rufus L. Edmisten, Attorney General, by Grayson G. Kelley, Assistant Attorney General, for the State.*

*Adam Stein, Appellate Defender, by Ann B. Petersen, Assistant Appellate Defender, and James R. Glover, for defendant-petitioner.*

BRANCH, Chief Justice.

The sole question presented by this appeal is whether the following finding by the trial judge may serve as an aggravating factor so as to warrant a more severe sentence under the Fair Sentencing Act: The defendant deliberately presented during the course of the trial evidence which he knew to be false about his presence on the day in question and deliberately presented false evidence concerning the statement attributed to him and obviously found by the jury to be false.

At early common law, every crime required a fixed penalty. 4 W. Blackstone, *Commentaries* 376 (J. Wendell ed. 1847). During the nineteenth century, however, this country saw a growing concern for rehabilitation of the offender and a concomitant development of the concept of indeterminate sentencing. *United States v. Grayson,* 438 U.S. 41 (1978) (hereinafter referred to as "*Grayson*"). *See* Comment, "Discretionary Penalty Increases on the Basis of Suspected Perjury," 1975 *U. of Ill. L.F.* 677 (1975) (hereinafter cited as "Comment, 'Suspected Perjury' "). Within the framework of indeterminate sentencing, generally there were prescribed minimum and maximum sentences, and the trial judge was vested with the duty and the authority to explore every conceivable source of information concerning the "particular rehabilitative needs of defendants." Comment, "Suspected Perjury," *supra,* pp. 678-79. Thus, trial judges have traditionally been afforded wide latitude when making sentencing determinations. *Grayson, supra; United States v. Tucker,* 404 U.S. 443 (1972); *Williams v. New York,* 337 U.S. 241 (1949). *See* Note, "Past Arrests and Perceived Perjury as Sentencing Factors in Illinois," 13 Loy Chi L.J. 935 (1982); Comment, "Suspected Perjury," *supra.*

As stated in *United States v. Tucker,* and reiterated in *United States v. Grayson,* prior to imposing a sentence, "a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." *United States v. Tucker,* 404 U.S. at 446, *quoted in Grayson, supra,* at 50.

Likewise, the accepted rule in North Carolina for many years was that within the limits of the sentence permitted by statute the extent of punishment is a matter committed to the sound discretion of the trial judge, and reviewable only upon a showing of

gross abuse of discretion. *State v. Suddreth,* 184 N.C. 753, 114 S.E. 828 (1922); *State v. Stansbury,* 230 N.C. 589, 55 S.E. 2d 185 (1949). In passing sentence the court has not been confined to evidence relating to the offense charged but could look "anywhere within reasonable limits, for other facts calculated to enable it to act wisely in fixing punishment. Hence, it may inquire into such matters as the age, the character, the education, the environment, the habits, the mentality, the propensities, and the record of the person about to be sentenced." *State v. Cooper,* 238 N.C. 241, 244, 77 S.E. 2d 695, 698 (1953); *State v. Stansbury, supra.*

As early as 1917 a federal circuit court determined that the trial judge's discretion when it came to sentencing extended to consideration of the judge's own belief that the defendant suborned perjury, and that such a consideration in connection with defendant's character could form the basis for an enhanced sentence. *Peterson v. United States,* 246 F. 118 (4th Cir. 1917), *cert. denied,* 246 U.S. 661 (1918). Similarly, a number of federal circuit courts have, over the years, approved the appropriateness of the trial judge's taking into account his belief that the defendant committed perjury during trial. *United States v. Nunn,* 525 F. 2d 958 (5th Cir. 1976); *United States v. Hendrix,* 505 F. 2d 1233 (2d Cir. 1974), *cert. denied,* 423 U.S. 897 (1975); *Hess v. United States,* 496 F. 2d 936 (8th Cir. 1974); *United States v. Moore,* 484 F. 2d 1284 (4th Cir. 1973); *United States v. Cluchette,* 465 F. 2d 749 (9th Cir. 1972); *United States v. Wallace,* 418 F. 2d 876 (6th Cir. 1969), *cert. denied,* 397 U.S. 955 (1970); *United States v. Levine,* 372 F. 2d 70 (7th Cir.), *cert. denied,* 388 U.S. 916 (1967); *Humes v. United States,* 186 F. 2d 875 (10th Cir. 1951). A number of states which have considered the issue of whether the judge may consider perceived perjury as a factor in sentencing have, like the federal courts, concluded that such a consideration is relevant to defendant's potential for rehabilitation. *E.g., Fox v. State,* 569 P. 2d 1335 (Alaska 1977); *Re Perez,* 84 Cal. App. 3d 168, 148 Cal. Rptr. 302 (4th Dist. 1978); *People v. Wilson,* 43 Colo. App. 68, 599 P. 2d 970 (1979); *People v. Meeks,* 81 Ill. 2d 524, 411 N.E. 2d 9 (1980).

Significantly, despite the obvious tendency to uphold the trial judge's consideration of defendant's perjury, the courts have con-

sistently rejected any notion that a defendant may receive a greater sentence as *punishment* for his perjury. *E.g., United States v. Hendrix,* 505 F. 2d 1233 (2d Cir. 1974); *United States v. Moore,* 484 F. 2d 1284 (4th Cir. 1973); *Strachan v. State,* 615 P. 2d 611 (Alaska 1980); *Re Perez,* 84 Cal. App. 3d 168, 148 Cal. Rptr. 302 (1978). While it has been held permissible to consider defendant's perjury within the scope of evaluating his character for rehabilitative potential, to enhance a defendant's sentence as punishment for the substantive offense of perjury for which he has not been indicted, tried and convicted would clearly be improper. *Id. See also* Comment, "Suspected Perjury" n. 43 at 682.

In *United States v. Grayson,* the United States Supreme Court squarely faced the issue of whether a trial judge may take into account, for sentencing purposes, his belief that the defendant deliberately lied on the stand. That Court first examined the permissible scope of a trial court's examination and evaluation of a defendant's character and conduct for purposes of determining his potential for rehabilitation. The Court held that perceived perjury was a permissible consideration and quoted with approval the observation made by Judge Marvin Frankel in *United States v. Hendrix:*

> The effort to appraise "character" is, to be sure, a parlous one, and not necessarily an enterprise for which judges are notably equipped by prior training. Yet it is in our existing scheme of sentencing one clue to the rational exercise of discretion. If the notion of "repentance" is out of fashion today, the fact remains that a manipulative defiance of the law is not a cheerful datum for the prognosis a sentencing judge undertakes. . . . Impressions about the individual being sentenced—the likelihood that he will transgress no more, the hope that he may respond to rehabilitative efforts to assist with a lawful future career, the degree to which he does or does not deem himself at war with his society—are, for better or worse, central factors to be appraised under our theory of "individualized" sentencing. The theory has its critics. While it lasts, however, a fact like the defendant's readiness to lie under oath before the judge who will sentence him would seem to be among the more precise and concrete of the available indicia.

*Grayson,* 438 U.S. at 51. The Court further held that considera-
tion of a defendant's perjury in the process of evaluation of his
character did not violate his right to due process of law. *Id.* at
53-55.

Despite the plethora of case law which supports the judge's
consideration of perceived perjury in the evaluation process, de-
fendant contends in the instant case that the trial judge erred in
finding as an aggravating factor that defendant lied during trial.
Defendant acknowledges that, at first blush, *Grayson* would ap-
pear to control this question. He maintains, however, that further
analysis reveals that *Grayson* provides no basis for permitting
the judge to use perceived perjury as an aggravating factor
under our Fair Sentencing Act. Defendant points to the statute
upon which the *Grayson* Court in part relied. That statute, 18
USC, § 3577 (1976), provides:

> No limitation shall be placed on the information concern-
> ing the background, character, and conduct of a person con-
> victed of an offense which a court of the United States may
> receive and consider for the purpose of imposing an ap-
> propriate sentence.

Defendant concedes that the *Grayson* Court's analysis may have
been instructive under our former scheme of indeterminate sen-
tencing in which there was virtually no limit upon matters which
the court could consider. *See State v. Cooper,* 238 N.C. 241, 77
S.E. 2d 695. However, defendant argues that our determinate
sentencing scheme, embodied in the Fair Sentencing Act, G.S.
15A-1340.1 *et seq.,* limits the discretion historically accorded trial
judges in this area, and that our statutory provisions do not per-
mit the trial court's assigning to his belief that a defendant lied at
trial the status of an aggravating factor.

We agree that our Fair Sentencing Act originated in a move-
ment away from indeterminate sentencing and toward the imposi-
tion of presumptive terms for specified crimes. *See generally*
Comment, Criminal Procedure—"The North Carolina Fair Sen-
tencing Act," 60 N.C. L. Rev. 631 (1982). In fact, however, it is not
clear the extent to which the act limits the sentencing discretion
of the trial judge. *Id.* As Justice Meyer observed in *State v.
Ahearn,* 307 N.C. 584, 300 S.E. 2d 689 (1983):

The Fair Sentencing Act is an attempt to strike a balance between the inflexibility of a presumptive sentence which insures that punishment is commensurate with the crime, without regard to the nature of the offender; and the flexibility of permitting punishment to be adapted, when appropriate, to the particular offender.

*Id.* at 596, 300 S.E. 2d at 696. The trial judge still has "discretion to increase or reduce sentences from the presumptive term upon findings of aggravating or mitigating factors, the weighing of which is a matter within [his] sound discretion." *Id.* at 597, 300 S.E. 2d at 697. (Quoting with approval *State v. Davis,* 58 N.C. App. 330, 333, 293 S.E. 2d 658, 661 (1982).) Furthermore, the Act was not intended "to remove all discretion from our able trial judges. The trial judge should be permitted wide latitude in arriving at the truth as to the existence of aggravating and mitigating circumstances, for it is only he who observes the demeanor of the witnesses and hears the testimony." *Id.* at 596, 300 S.E. 2d at 697.

[1] The issue in the instant case, however, is not really one of the extent of the trial judge's discretion, for the statute does not purport to grant him the discretion to create new aggravating factors. Rather, the statute lists several aggravating factors which the trial judge is required to consider and also authorizes him to consider any other aggravating factors "that he finds are proved by the preponderance of the evidence, and that are reasonably related to the purposes of sentencing. . . ." G.S. 15A-1340.4. The issue in this case, then, is twofold: (1) whether the use of defendant's perjury to aggravate his sentence is "reasonably related to the purposes of sentencing"; and (2) whether the trial judge's finding of perjury is supported by a preponderance of the evidence.

In G.S. 15A-1340.3, we find:

The primary purposes of sentencing a person convicted of a crime are to impose a punishment commensurate with the injury the offense has caused, taking into account factors that may diminish or increase the offender's culpability; to protect the public by restraining offenders; to assist the offender toward rehabilitation and restoration to the community as a lawful citizen; and to provide a general deterrent to criminal behavior.

Of the purposes listed, only one[1] is applicable to the issue of enhancement of a sentence due to perceived perjury: "rehabilitation and restoration to the community as a lawful citizen." As we have noted, almost without exception, courts have permitted the trial judge to consider a defendant's perjury during trial to influence the judge's assessment of defendant's potential for rehabilitation. *E.g., Grayson, supra; United States v. Nunn,* 525 F. 2d 958 (5th Cir. 1976); *United States v. Hendrix,* 505 F. 2d 1233 (2d Cir. 1974); *United States v. Moore,* 484 F. 2d 1284 (4th Cir. 1973); *Fox v. State,* 569 P. 2d 1335 (Alaska 1977); *People v. Wilson,* 43 Colo. App. 68, 599 P. 2d 970 (1979); *Re Perez,* 84 Cal. App. 3d 168, 148 Cal. Rptr. 302 (1978 4th Dist.); *People v. Meeks,* 81 Ill. 2d 524, 411 N.E. 2d 9 (1980). As long as the sentence is not increased to punish the perjury itself and the perceived perjury is being treated as only a factor to be weighed, we can find nothing in our statute which would preclude the use of perjury as an aggravating factor, provided, of course, it is proved by a preponderance of the evidence. G.S. 15A-1340.4.

In initially determining the propriety of the use of perceived perjury in sentencing, we find the Illinois case of *People v. Meeks* to be instructive and persuasive. In 1977, Illinois became one of the first states to adopt a determinate sentencing scheme for felonies. Ill. Rev. Stat. ch. 38 ¶ 1005-8-1. By 1979, the lower appeals courts had split on the issue of whether perjury could be a sentencing consideration. *Compare People v. Cowherd,* 63 Ill. App. 3d 229, 380 N.E. 2d 21 (4th Dist. 1978) (holding that the federal statute relied upon in *Grayson* did not control in Illinois) *with People v. Galati,* 75 Ill. App. 3d 860, 393 N.E. 2d 744 (2d Dist. 1979) (holding that perceived perjury could be considered as indicative of defendant's rehabilitative potential). In *Meeks,* the defendant was convicted of three counts of unlawful delivery of a controlled substance. The crime allegedly took place in Centralia. Her defense at trial was alibi and she "testified that for a two-month period, the period which spanned the sales of these drugs,

---

1. While obviously the first two purposes do not apply here, it may appear at first blush that the deterrence purpose might apply since enhancement of punishment on the basis of perjury would likely deter others from lying during trial. However, as noted earlier, it is impermissible to increase a sentence as punishment for the perjury, for such a practice would likely violate due process. Increasing punishment on the basis of perjury in order to deter others from commission of perjury amounts to the same thing.

she was at all times in Chicago." 81 Ill. 2d 524, 536, 411 N.E. 2d 9, 15. A neighbor in  Centralia, who was a police officer, testified that he saw defendant off and on there in Centralia during the period in question. Furthermore, during impeachment of defendant, the State introduced an employment application signed by her and submitted to a Centralia employer and dated during the period that she contended she was in Chicago. The defendant could not explain how the Centralia employer received the application.

In sentencing defendant, the trial judge noted that the jury did not believe defendant's alibi. He stated that, "the jury drew the only conclusion it had, that she was dealing a false hand." *Id.* at 531, 411 N.E. 2d at 13. The Fifth District Appellate Court had remanded the case because, among other things, the trial judge had considered for sentencing purposes his belief that defendant had committed perjury. 75 Ill. App. 3d 357, 393 N.E. 2d 1190 (1979). The Supreme Court reversed. Relying on *Grayson, supra,* the court found no constitutional violation. The Court further held that the consideration of defendant's perjury was relevant in terms of evaluating her potential for rehabilitation. The Court noted:

> As we stated in *People v. Jones:* "Realistically, it is impossible for a judge, in determining what sentence should be imposed, to erase from his mind the testimony of the defendant. The impact of that testimony upon the sentencing judge can hardly be said to be irrelevant to an appraisal of the defendant's character and his prospects for rehabilitation."

*Id.* at 536, 411 N.E. 2d at 15 (quoting *People v. Jones,* 52 Ill. 2d 247, 249-50, 287 N.E. 2d 680, 681 (1972)).

We are constrained to agree that the character of the defendant, his conduct, and particularly that conduct as it reflects his attitude toward society and its laws, are relevant considerations for a trial judge in determining what sentence to be imposed. Perjury at trial often indicates a defendant's continued defiance of society's system of laws and to that extent reflects on his potential for rehabilitation and is thus "reasonably related to the purposes of sentencing."

[2]  Turning now to the second prong of our statute's require-
ment for finding additional aggravating factors, we cannot say
that the judge's determination that defendant lied on the stand
was not proved by a preponderance of the evidence. In *State v.
Ahearn*, we reiterated what that standard means within the con-
text of our sentencing act. Quoting from 2 Stansbury's North
Carolina Evidence § 212 (Brandis Rev. 1973), Justice Meyer
wrote:

> "This preponderance does not mean number of witnesses or
> volume of testimony, but refers to the reasonable impression
> made upon the minds of the jury by the entire evidence, tak-
> ing into consideration the character and demeanor of the wit-
> nesses, their interest or bias and means of knowledge, and
> other attending circumstances."

307 N.C. at 596, 300 S.E. 2d at 697.

A reading of the transcript in the instant case reveals numer-
ous discrepancies in the defendant's testimony. The most notable
of these was his inability to explain how, consistent with his alibi
defense of having been in Charleston, South Carolina during the
entire month of August, his signed affidavit of indigency, dated 18
August 1981 and sworn to before a deputy clerk in Cleveland
County, North Carolina, came into being. His curious knowledge
of many of the technical facts surrounding the crime, as evidenced
by his original confession to the police, belied his later disavowal
of that statement at trial. These inconsistencies, together with
our traditional deference to the trial judge's personal observation
and consideration of the defendant's conduct and demeanor upon
the stand, lead us to conclude that the trial court in this case com-
mitted no error in finding that defendant perjured himself during
trial.

Even so, we are not unaware of the numerous criticisms of
the *Grayson* holding, and of the sundry dangers that lurk in giv-
ing the trial judge carte blanche to find perjury in every case in
which there are inconsistencies in a defendant's testimony or the
jury does not believe his defense. *E.g., Grayson, supra* (Stewart,
Brennan and Marshall, JJ., dissenting); *United States v. Moore*,
484 F. 2d 1284 (4th Cir. 1973) (Craven, J., concurring); *Scott v.
United States*, 419 F. 2d 264 (D.C. Cir. 1969). *See also*, Note, "Past
Arrests and Perceived Perjury as Sentencing Factors in Illinois,"

13 Loy Chi L.J. 935 (1982); Note, "Judge's Discretion to Consider Defendant's False Testimony," 17 Duq. L. Rev. 521 (1979); Comment, "Suspected Perjury," *supra.* The potential problems raised by the commentators fall into four general areas. The first, often cited, is that permitting the trial judge to enhance a defendant's sentence based on perceived perjury at trial chills the criminal defendant's right to testify in his own behalf. *Id.* While there may indeed be some instances where a defendant may be reluctant to testify, we are not persuaded that the potential of an enhanced sentence will seriously deter most defendants from testifying. Furthermore, we can see no real quantitative or qualitative difference between a defendant's dilemma in this situation and his having to decide in the first place whether or not to take the stand and subject himself to impeachment by the bringing out of past bad acts. As the United States Supreme Court observed in *Crampton v. Ohio,* 402 U.S. 183 (1971):

> It is not thought overly harsh in such situations to require that the determination whether to waive the privilege take into account the matters which may be brought out on cross-examination. It is also generally recognized that a defendant who takes the stand in his own behalf may be impeached by proof of prior convictions or the like. [Citations omitted.] Again, it is not thought inconsistent with the enlightened administration of criminal justice to require the defendant to weigh such pros and cons in deciding whether to testify.

*Id.* at 215. In short, we do not believe that allowing the judge to consider perjury in evaluating defendant's prospects for rehabilitation, and thus opening up the possibility of an increase in punishment on that basis, rises to the level of an impermissible chill on his right to testify since it requires no more significant a strategic choice than does electing to take the stand to begin with. *See* Note, "Judge's Discretion to Consider Defendant's False Testimony," 17 Duq. L. Rev. 521, *supra.*

A second criticism of permitting the use of perceived perjury to aggravate a sentence is that for the most part it is an unreviewable determination. *See Grayson, supra* (Stewart, J., dissenting). *See also* Note, "Judge's Discretion to Consider Defendant's False Testimony," 17 Duq. L. Rev. 521 (1979); Note, "Discre-

tionarily Enhanced Sentences Based Upon Suspected Perjury at Trial," VII Fordham Urb. L.J. 441 (1979); Note, "Past Arrests and Perceived Perjury as Sentencing Factors in Illinois," 13 Loy Chi L.J. 935 (1982); Comment, "Suspected Perjury," *supra.* Central to this particular criticism is the fact that, as made clear in the *Grayson* opinion, the trial judge in many cases is not required to record his reasons for enhancing a defendant's sentence. Almost without exception, the critics of *Grayson* suggest that an obvious cure for this ill is to require the judge to disclose the factors upon which he bases the sentence. *E.g.,* Note, "Judge's Discretion to Consider Defendant's False Testimony," 17 Duq. L. Rev. 521 (1979); Comment, "Suspected Perjury," *supra.* The requirement of disclosure assures the appellate courts an opportunity to review the factual bases which support the trial judge's determination.

The problem of lack of reviewability does not arise in this case, however, since our statute by its terms requires (with certain exceptions not applicable here) the judge, in imposing a sentence other than the presumptive sentence, to make findings in the record. G.S. 15A-1340.4(b). The statute also requires that any finding in aggravation or mitigation must be proved by a preponderance of the evidence. G.S. 15A-1340.4. Thus, in this State, the judge must not only list factors; there is also a specific standard against which the appellate courts may gauge the trial court's findings.

A third criticism in this area is that the defendant's proclivity to protest his innocence at trial does not necessarily reflect his potential for rehabilitation. *E.g., United States v. Moore,* 484 F. 2d 1284, 1288 (4th Cir. 1973) (Craven, J., concurring). As the court noted in *Scott v. United States,* a pre-*Grayson* case,

> the peculiar pressures placed upon a defendant threatened with jail and the stigma of conviction make his willingness to deny the crime an unpromising test of his prospects for rehabilitation if guilty. It is indeed unlikely that many men who commit serious offenses would balk on principle from lying in their own defense. The guilty man may quite sincerely repent his crime but yet, driven by the urge to remain free, may protest his innocence in a court of law.

419 F. 2d 264, 269 (1969). While we are not unmindful of human nature and of the natural tendency in both the best and the worst

of us to protest our innocence, we cannot as a court condone a defendant's taking the stand and violating the oath, however "natural" it might be to do so. Whether or not the fact that a defendant lied at trial is indicative of his potential for rehabilitation would seem to depend upon the facts and circumstances of each case and would definitely influence the weight to be given to it by the trial judge in the evaluative process.

The fourth criticism generally leveled at permitting a finding of perjury is straightforward: the judge may be wrong. *E.g.*, *United States v. Moore*, 484 F. 2d 1284, 1288 (4th Cir. 1973) (Craven, J., concurring). While error here is no doubt possible, in our opinion, the chance of it is significantly lessened due to the requirement in North Carolina that a record be kept and that all factors be proved by a preponderance of the evidence.

Despite our holding today that nothing in our Fair Sentencing Act specifically precludes the use of perceived perjury as an aggravating factor to be weighed in the overall assessment of a defendant's rehabilitative potential, we do not encourage the use of such perjury to enhance a defendant's sentence. As we have noted, permitting judges to use perjury as an aggravating factor is fraught with potential dangers, and it is our recognition of those dangers, together with our recognition of the frailties of human perception, which leads us to adhere to the following admonition issued by Judge Butzner in *United States v. Moore*:

> We caution, however, that sentencing judges should not indiscriminately treat as a perjurer every convicted defendant who has testified in his own defense. Witnesses induced by sordid motives or fear have been known to fabricate accusations with such guile that even conscientious triers of fact have been misled. Moreover, some essential elements of proof of criminal conduct, such as knowledge, intent, malice, and premeditation are sometimes so subjective that testimony about them cannot be readily categorized as true or false. Judges must constantly bear in mind that neither they nor jurors are infallible. A verdict of guilty means only that guilt has been proved beyond a reasonable doubt, not that the defendant has lied in maintaining his innocence. It is better in the usual case for the trial judge who suspects perjury to request an investigation. Then, if the facts warrant it, the

[District Attorney] may institute prosecution for this separate and distinct crime.

484 F. 2d 1284, 1287-88.

[1]   We, therefore, hold that nothing in our Fair Sentencing Act specifically precludes a finding of perjury as an aggravating factor to be weighed in considering the sentence to be imposed upon a defendant, provided, of course, the finding meets the requirements of the statute; however, in view of some of the potential dangers inherent in this particular factor and also of its peculiar nature, a trial judge should exercise extreme caution in this area and should refrain from finding perjury as an aggravating factor except in the most extreme case.

We find no error in the holding of the Court of Appeals that the trial judge did not err in finding as an aggravating factor that the defendant committed perjury at trial.

The decision of the Court of Appeals is

Affirmed.

Justice FRYE dissents for the reasons stated in the concurring opinion in the Court of Appeals.