STATE OF NORTH CAROLINA v. MILDRED WATKINS VANDIVER

No. 91A87

(Filed 3 February 1988)

**1. Constitutional Law § 30; Bills of Discovery § 6— police memorandum—refusal to order discovery**

The trial court did not err in refusing to order disclosure pursuant to N.C.G.S. § 15A-903(f)(2) of a police memorandum purportedly containing a prior inconsistent statement by a State's witness where the memorandum contained only a narrative of the offense and did not attribute oral statements to any of the three witnesses mentioned therein, and it thus did not contain a witness's prior "statement" within the meaning of section 903.

**2. Criminal Law § 138.29— perjury not proper aggravating factor**

Perjury may no longer constitute a nonstatutory aggravating factor in North Carolina. Prior case law conflicting with this decision is overruled.

APPEAL by defendant from judgment sentencing her to life imprisonment for conviction of murder in the second degree, said judgment imposed by *Hight, J.,* at the 1 December 1986 session of Superior Court, CUMBERLAND County. Heard in the Supreme Court 11 November 1987.

*Lacy H. Thornburg, Attorney General, by Edmond W. Caldwell, Jr., Special Deputy Attorney General,* for the state.

*Robin E. Hudson for defendant.*

MARTIN, Justice.

The victim, Robert Eugene Scott, bled to death from a single stab wound to the neck on 28 December 1985. On that date, the victim had been visiting his mother and stepfather, Shirley and Joseph Haselden, in their apartment on the second floor of a Fayetteville rooming house. At about 6:45 p.m., the victim became embroiled in an argument with defendant's boyfriend, Paul Hair, outside defendant's first-floor apartment. Shortly thereafter the victim suffered a stab wound which severed his carotid artery. At trial the state theorized that defendant stabbed the victim, while defendant maintained that Paul Hair was solely responsible for the crime.

The state's evidence tended to show that the Haseldens, the victim, and Gregory Davis, another second-floor resident, agreed

to confront defendant and complain about loud music coming from her apartment below. The group went downstairs and knocked on defendant's door. Paul Hair came to the door yelling and cursing, and an argument ensued between him and the victim. Defendant warned the victim not to bother Hair and disappeared back into her apartment. Recognizing the futility of the dispute, Davis and Mr. Haselden went back to their own apartments. The victim remained at defendant's door and Mrs. Haselden lingered on the stairs.

Mrs. Haselden, the only purported eyewitness to the crime, testified that she was standing at the bottom of the stairs across from defendant's door when she heard Paul Hair say "Go ahead and do it if you're going to." Defendant then came out of her apartment, exclaimed "No son of a bitch tells me I'm not allowed to play my [expletive] music," and stabbed the victim with a butcher knife.

Defendant testified on her own behalf, denying any participation in the crime. She testified that the victim continued arguing with Hair after the others had gone upstairs. At one point during the dispute the victim came inside the apartment and slapped defendant's face. Hair then followed the victim into the hallway outside the apartment with a steak knife in his hand. Defendant did not see the actual stabbing but did notice that the victim was bleeding. Later, Hair told defendant that police would not prosecute a woman and encouraged her to take the blame for the stabbing.

The jury convicted defendant of murder in the second degree. The trial judge found one factor in mitigation, that defendant's criminal record consisted solely of misdemeanors punishable by not more than sixty days' imprisonment, and one factor in aggravation, that defendant's testimony was perjured. Having determined that the aggravating factor outweighed the mitigating factor, the trial judge sentenced defendant to life imprisonment.

[1] Defendant first argues that she is entitled to a new trial because the trial judge refused to order disclosure of a police memorandum purportedly containing a prior inconsistent statement by witness Shirley Haselden. Following Mrs. Haselden's direct testimony that she had observed the stabbing from the bot-

tom of the stairs, defense counsel requested that the report in question, filed by Officer J. D. Bronson of the Fayetteville Police Department on the night of the killing, be admitted for purposes of cross-examination. This request was denied. Counsel renewed the motion during cross-examination of Detective David Pulliam of the Fayetteville Police Department and it was again denied. The trial court made written findings of fact and conclusions of law, then sealed the report for appellate review.

Defendant argues that the trial court's ruling was a clear violation of N.C.G.S. § 15A-903(f)(2), which provides:

> After a witness called by the State has testified on direct examination, the court shall, on motion of the defendant, order the State to produce *any statement of the witness* in the possession of the State that relates to the subject matter as to which the witness has testified. If the entire contents of that statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

(Emphasis added.)

We have opened the sealed envelope and examined the document in question. Our own impressions of the report are accurately reflected by the voir dire testimony of Detective Pulliam:

> [Mr. VanStory]: The report that you just looked at, that was a field report made by a uniformed officer?
>
> [Detective Pulliam]: Yes, sir, it is.
>
> Q. What are the purposes of those field reports?
>
> A. He writes down his investigative notes on the incident as any physical observation that he makes or any information that may have been transferred to him from any outside source. And he does a summation or a narrative of the information given to him, and then he places that information in a summary report or an original report.
>
> Q. Is it meant to be a detailed account of what occurred?
>
> A. No, sir, it's not.

Q. In this particular report that you just looked at, he doesn't specify from whence this information came or from whom it came; is that correct?

A. That's correct.

Q. As a matter of fact, three different people is [sic] listed as possible sources of the information?

A. That is correct.

Q. And he doesn't indicate who told him what?

A. That is correct.

The term "statement" as used in N.C.G.S. § 15A-903(f)(2) includes statements signed or otherwise adopted by the witness and "substantially verbatim" recitals or oral statements which are contemporaneously recorded. N.C.G.S. § 15A-903(f)(5) (1983). Because the report in question contains only a narrative of the offense and does not attribute oral statements to any of the three witnesses mentioned therein, we conclude that it does not contain Mrs. Haselden's prior "statement" for purposes of section 903. Defendant's assignment of error is overruled.

[2] Defendant next challenges the validity of the life sentence imposed. She contends that the trial judge erroneously found as a nonstatutory aggravating factor that defendant's testimony was perjured.

We first approved the use of perjury as an aggravating factor in *State v. Thompson*, 310 N.C. 209, 311 S.E. 2d 866 (1984). Recognizing that our decision was "fraught with potential dangers," however, we strongly cautioned that "a trial judge should exercise extreme caution in this area and should refrain from finding perjury as an aggravating factor except in the most extreme case." *Id.* at 226-27, 311 S.E. 2d at 876. We have been careful to reiterate this admonishment on each occasion on which the issue has arisen. *See State v. Rogers*, 316 N.C. 203, 341 S.E. 2d 713 (1986); *State v. Brown*, 315 N.C. 40, 337 S.E. 2d 808 (1985), *cert. denied*, --- U.S. ---, 90 L.Ed. 2d 733 (1986).

Experience has demonstrated that the concerns expressed in *Thompson* were well-founded. The "extreme case" standard has proved unworkable and our words of caution insufficient bulwarks

against misuse of the aggravating factor. This is amply demonstrated by the facts of this case. Here, the only evidence of perjury was the fact that defendant's testimony was contradicted by Shirley Haselden. The trial judge noted that the jury "by its verdict obviously found that the defendant's testimony was false." That the trial judge's finding of perjury was conjectural is certain.

Because a trial judge's determination of the factor is basically dependent upon his subjective evaluation of the defendant's demeanor, we find it impossible to formulate adequately concrete guidelines to prevent future erroneous findings. In the interests of justice, we therefore hold that perjury may no longer constitute a nonstatutory aggravating factor in North Carolina. If the facts of the particular case warrant it, a defendant who commits perjury may be prosecuted under a separate indictment for that offense. In so ruling, we intend no criticism of the trial judges who have wrestled unsuccessfully with this problematic sentencing issue.

The rule herein announced shall be effective in all sentencing hearings commencing on or after the certification date of this opinion, including the resentencing of this defendant. Prior case law is overruled to the extent that it conflicts with this decision. This cause is remanded to the Superior Court, Cumberland County, for a new sentencing hearing.

Remanded for new sentencing hearing.